No.   **91-107**

IN THE SUPREME COURT OF THE STATE OF MONTANA

**1992**

IN THE MATTER OF J.H., S.H., and N.H.,

Youths in Need of Care

APPEAL FROM:   District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Thomas M. McKittrick, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Patrick F. Flaherty, Attorney at Law,
Great Falls, Montana

For Respondent:

Hon. Marc Racicot, Attorney General, Elizabeth L.
Griffing, Assistant Attorney General, Helena,
Montana: Patrick L. Paul, Cascade County Attorney,
Tammy Plubell, Deputy Cascade County Attorney,
Great Falls, Montana

Submitted on Briefs:   October **17, 1991**

Decided:   January 30, **1992**

FILED

Filed: JAN 3 0 1992

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Appellant Sheila Hill, the natural mother of J.H., S.H., and N.H., appeals from an order of the Eighth Judicial District Court, Cascade County, terminating her parental rights of her three children. The District Court awarded legal custody to the Montana Department of Family Services (hereinafter DFS) with the right to consent to adoption.

We affirm.

Appellant raises two issues on appeal.

1. Whether there is substantial credible evidence to uphold the District Court's determination to terminate the parental rights of the appellant.

2. Whether the State should be estopped from terminating appellant's parental rights.

The events leading to the termination of parental rights occurred on March 4, 1989. On that day, appellant and her husband, David Hill, the natural father, drove to the home of some friends. Mr. Hill went inside the home, leaving appellant and their three children, J.H., age five, S.K., age three, and A.H., age ten months, in an unheated car. At the time, the outside temperature was approximately three degrees above zero fahrenheit. The eldest child needed to go to the bathroom, so appellant covered the other two children with a blanket and left the car in order to take the oldest child into the house. Approximately an hour later appellant and Mr. Hill returned to the car. After a few minutes, appellant

realized A.H. was not breathing. They drove to appellant's mother's home and attempted CPR, but were unsuccessful. An ambulance was called and A.H. was pronounced dead at the hospital.

According to the autopsy report, the cause of death was undetermined, although the findings of the report were consistent with Sudden Infant Death Syndrome (commonly known as SIDS). The emergency room physician and pediatrician was Dr. Nancy Maynard. She testified that the cause of death was undetermined because the baby was too old to be a true SIDS case. She stated that other circumstances, such as leaving the child in the extreme cold, could have been a contributing factor.

On April 20, 1989, the District Court issued an order authorizing protective services and to show cause. On May 8, 1989, a show cause hearing was conducted. The parents did not object to DFS being granted temporary investigative authority for 90 days. On June 1, 1989, the parents agreed to a case plan. During the 90 days the children were to remain in appellant's care as long as the children were not in danger of abuse or neglect. A social worker monitored the placement. In addition, appellant was to successfully complete parenting classes, undergo a chemical dependency evaluation, attend a domestic violence support group, complete a psychological exam, and continue with therapy. The District Court also appointed a guardian ad litem for the children. During this period the appellant was pregnant with her fourth child.

On June **12, 1989,** N.H. was born.  On July 12, **1989,** the child was hospitalized for failure to thrive because appellant was unable to adequately care for her.  On July 14, **1989,** DFS placed all of the children in foster care.  DFS petitioned the District Court for temporary legal custody on July 17, **1989.**

On September **27, 1989,** the District Court found the children to be youths in need of care and granted DFS temporary legal custody for six months.  A treatment plan was stipulated to by all the parties and approved by the District Court.  Appellant and Mr. Hill were to complete the plan within six months.

In summary, the treatment plan required appellant to complete an aftercare program, continue parenting classes, enroll in a treatment program to deal with her severe depression, attend a domestic abuse program, and complete individual therapy.  The purpose of the treatment plan was to reunite the parents with their children and it set several goals for the parents to achieve.  One such goal was for appellant to achieve adequate parenting skills.

Mr. Hill failed to complete the treatment plan and voluntarily consented to the termination of his parental rights, provided that DFS allow him some sort of contact with the children in the future. The District Court granted this request.

On June 8, **1990,** DFS petitioned the District Court for permanent legal custody and termination of appellant's parental rights.  The DFS mainly alleged that appellant failed the treatment plan because she had not demonstrated any improvement in her

4

ability to adequately parent the children and that she was unlikely to improve within a reasonable time. On November 1, 1990, a termination hearing was held.

On December 12, 1990, the District Court ruled that although the appellant complied with the requirements of the treatment plan, her parenting abilities had not improved and she was still making decisions that would endanger her children if they were in her care. The court granted DFS permanent legal custody with authority to consent to the adoption of the children. Appellant appeals the order.

I

Whether there is substantial credible evidence to uphold the District Court's determination to terminate the parental rights of the appellant.

The State has the burden of proving by "clear and convincing" evidence that the statutory criteria under § 41-3-609, MCA (1989), have been met. Matter of F.M. (Mont. 1991), 48 St.Rep. 407, 409, 811 P.2d 1263, 1266. Thus, it is up to the District Court to determine whether the State has met this burden of proof, and whether the parent's custodial and parental rights should be terminated. Matter of J.L.S. (1988), 234 Mont. 201, 205, 761 P.2d 838, 840.

We afford the District Court "all reasonable presumptions as to correctness of the determination . . . ." Matter of R.A.D. (1988), 231 Mont. 143, 148, 753 P.2d 862, 865. We will not disturb

5

such decision on appeal "regarding findings of fact if those findings are supported by substantial credible evidence." Matter of F.M., 811 P.2d at 1266 (quoting Matter of R.B. (1990), 242 Mont. 141, 143-44, 788 P.2d 1361, 1363. Therefore, we presume that the District Court's determination is correct unless it is clearly erroneous as to the facts.

The relevant statute to this case is § 41-3-609(1)(c), MCA (1989), which states the following:

> The court may order a termination of the parent-child legal relationship upon a finding that . . . :
>
> . . . .
>
> (c) the child is an adjudicated youth in need of care and both of the following exist:
>
> (i) an appropriate treatment plan that has been approved by the court has not been complied with by the parents or <u>has not been successful</u>: and
>
> (ii) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time. [Emphasis added.]

When deciding "whether the conduct or condition of the parents is unlikely to change within a reasonable time," the District Court must enter a finding that to continue the legal relationship between the parent and child "will likely result in continued abuse or neglect or that the conduct or the condition of the parents renders the parents unfit, unable, or unwilling to give the child adequate parental care." Section 41-3-609(2), MCA (1989). The court shall consider but is not restricted to the following factors when making such determinations:

6

(a) [E]motional illness, mental illness, or mental deficiency of the parent of such duration or nature as to render the parent unlikely to care for the ongoing physical, mental, and emotional needs of the child within a reasonable time;

(b) a history of violent behavior by the parent;

(c) a single incident of life-threatening or gravely disabling injury to or disfigurement of the child caused by the parent:

(d) excessive use of intoxicating liquor or of a narcotic or dangerous drug that affects the parent's ability to care and provide for the child;

(e) present judicially ordered long-term confinement of the parent;

(f) the injury or death of a sibling due to proven parental abuse or neglect; and

(g) any reasonable efforts by protective service agencies that have been unable to rehabilitate the parent.

Section 41-3-609(2) (a)-(g), MCA (1989). When examining the factors listed above, the court shall give primary consideration to what is in the best interests of the children. Section 41-3-609(3), MCA (1989).

Appellant did not contend that the children are not youths in need of care. Appellant did argue that the State failed to show by clear and convincing evidence that the treatment plan was unsuccessful because she complied with all of the conditions of the plan. In addition, appellant asserted that the State did not prove that conditions rendering appellant unfit were so inherently poor that they could not be improved within a reasonable time. We disagree. The testimony of the State's witnesses, as well as

7

appellant's witnesses, constituted substantial credible evidence to support the court's findings of fact and conclusions of law.

Dr. Craig Matelich, the family pediatrician, expressed serious concerns about the level of appellant's parenting skills and how that adversely affected the children's welfare. For example, Dr. Matelich's first examination of newborn N.H. following her release from the hospital revealed a significant weight loss. Dr. Matelich spent a considerable amount of tine explaining to appellant how to increase milk production for breast feeding but she failed to follow through with the recommendations. During this period N.H. also suffered from an eye infection which, if not treated properly, could have resulted in permanent damage to her eye. The doctor prescribed some medication for the baby and explained to appellant how it should be administered. She failed to properly administer the medication. Upon notification by the doctor, DFS intervened and sought temporary custody of the children.

Dawn Gandolf, a psychiatric technician, provided appellant with one-to-one parenting sessions. When she first visited appellant's home in November 1988, it was dirty and cluttered. Appellant did not have any food, money, transportation, or resources for taking care of the children. Ms. Gandolf attempted to train appellant in parenting skills for approximately ten months and spent considerably more time with appellant than she had contracted for with DFS. Unfortunately, appellant was unable to improve her parenting skills. Ms. Gandolf also expressed concern

about appellant being the sole parent of the children, because appellant was unable to satisfy the children's basic needs of proper supervision, discipline, nutrition, and cleanliness.

Rich Kuka, director of the parenting program, evaluated the parenting skills of appellant. He also had doubts about appellant's ability to parent effectively. She exhibited little evidence that she had retained what she learned in attending two ten week parenting classes. He concluded that she would not benefit from attending a third parenting class.

The record not only reflected that appellant was not capable of parenting her children effectively, but it also revealed that the children improved their physical, emotional, and intellectual health while under foster care.

Hebe Chestnut was the court appointed guardian ad litem for the children. She also testified that she did not witness any improvement in appellant's parenting skills. In contrast, she did notice a remarkable improvement in the children's behavior once taken out of the abusive environment and placed in a foster home.

Ms. Pohold, the children's first foster parent, described the changes in the children once they were brought to her home. Initially, the children were not disciplined. They did not know what time to go to bed nor did they know what time to eat. The son, J.H., exhibited aggressive behavior as well as emotional problems. In addition, J.H. was diagnosed as having a learning disability. The daughter, S.H., also exhibited aggressive

9

behavior and an inability to communicate effectively with others. By the time these children left the care of Ms. Pohold a year later, they were increasingly behaving like children of their age. In addition, N.H., the infant, began to thrive and develop at a normal rate once placed in foster care.

Andrea Deligdish was the children's therapist. She stated the children suffered greatly from the alcohol abuse and domestic violence they witnessed in appellant's home. She added that the children's educational, emotional, and social skills were seriously impaired but quickly changed once moved out of the abusive environment. She concluded that the children were in need of a stable and permanent home. It was not in their best interest to prolong their placement.

Lastly, the evidence indicates that the conduct or condition of the appellant was unlikely to change within a reasonable time, and that to continue it would likely result in continued abuse and neglect of the children. Only three weeks prior to the termination hearing, appellant placed herself in an abusive situation by living with another man who had a history of domestic violence and alcohol abuse. Appellant indicated that she would like to continue a friendship with this person. She lived in an apartment complex that consisted of a common bathroom which was shared by other tenants. There was no place for the children to play. In addition, DFS spent a considerable amount of time with appellant attempting to teach her basic parenting skills but was

unsuccessful. Although appellant demonstrated strong motivation for learning parenting skills, she was unsuccessful in applyingthe knowledge practically. Moreover, appellant admitted during her testimony that she was not ready to take care of her children. The testimony of her own witnesses showed that she needed work on her own problems before caring for her children.

The District Court concluded that the treatment plan was unsuccessful because appellant had not achieved one of the stated goals of the plan which was for appellant to improve her parenting abilities. In a recent decision, we stated "mere compliance with the treatment plan is not enough. Section 41-3-609(1)(c)(i), MCA, imposes the additional requirement that the treatment plan be successful." Matter of F.M., 811 P.2d at 1267.

The District Court properly considered the criteria listed in § 41-3-609(1)(c), MCA (1989), especially the efforts exerted by DFS in trying to rehabilitate appellant, as well as the circumstances surrounding the death of one infant and the factors surrounding the abuse and neglect of the newborn and the other children.

We hold that the District Court's findings that the treatment plan was unsuccessful and that the appellant's conduct or condition was unlikely to improve within a reasonable time were not clearly erroneous and that it was in the best interests of the children to terminate appellant's parental rights. We affirm the District Court on this issue.

11

## II

Whether the State should be estopped from terminating appellant's parental rights.

Appellant contends that the State should be estopped from terminating her parental rights because she relied on representations made and known by the State to be inadequate in helping her make changes necessary to improve her parenting skills. Appellant's contention lacks merit.

For the District Court to terminate the parental rights of a parent, it must give primary consideration to what is in the best interests of the children. Section 41-3-609(3), MCA (1989). The evidence shows that while the children were in their mother's care they were being neglected. One infant had died and another infant had to be hospitalized. The two elder children demonstrated intellectual, social, and physical abilities well below the normal range. Only after being placed in foster care did the children begin to improve. We hold that the appellant's contention is without merit and that the District Court properly considered what was in the children's best interests.

_____
Justice

12

**We** concur:

_____
Chief Justice

_____

_____

_____
Justices

13