No. 03-146

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 104

IN THE MATTER OF J.G., C.G., and M.G.-E.,

    Youths in Need of Care.

APPEAL FROM:    District Court of the Nineteenth Judicial District,
In and for the County of Lincoln, Cause No. DN-01-02,
The Honorable Michael C. Prezeau, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

        Scott B. Spencer, Attorney at Law, Libby, Montana

        For Respondent:

        Hon. Mike McGrath, Attorney General; Kathleen Jenks,
Assistant Attorney General, Helena, Montana

        Bernie Cassidy, Lincoln County Attorney, Libby, Montana

Submitted on Briefs:  February 3, 2004

Decided:  April 20, 2004

Filed:

_____
Clerk

Justice John Warner delivered the Opinion of the Court.

¶1     R.G., the biological mother of J.G., C.G., and M.G.-E., appeals from an order of the Nineteenth Judicial District Court, Lincoln County, terminating her parental rights and awarding custody of the children to the Department of Public Health and Human Services (Department) with the right to consent to adoption.  We affirm the District Court.

¶2     We address the following issues on appeal:

¶3     1.  Did the District Court err in considering issues beyond physical neglect when it concluded R.G. failed to comply with the treatment plan?

¶4     2.  Did the District Court err in concluding R.G.'s condition was not likely to change in a reasonable time?

¶5     3.  Did the District Court err in concluding termination of R.G.'s parental rights was in the best interests of the children?

## I. FACTUAL AND PROCEDURAL BACKGROUND

¶6     This case involves R.G.'s right to parent her three children.  Although the proceedings in the trial court also terminated the respective fathers' parental rights, none of the three fathers appeal.

¶7     In the spring of 1999, the Department received a report alleging unsanitary living conditions in R.G.'s home.  Upon petition in July, the court granted the Department temporary investigative authority.  In January 2000, the case was dismissed because conditions apparently improved.  In July of 2000, the Department again petitioned for and was granted investigative authority based on reports of a generally dirty and smelly house.

2

In October, this authority was also allowed to terminate because of progress made. In November 2000, a mandated reporter informed the Department that R.G. had been in six times for head lice. The reporter said R.G. was told she could no longer use Lundine shampoo and was told to clean her house. R.G. allegedly stomped out of the building when given this advice. The Department did not act on this report.

¶8 In January 2001, the Department received another referral regarding filthy living conditions at R.G.'s house. On February 6, 2001, the Department visited R.G.'s home and determined that the unsanitary and unsafe living conditions were such that the children had to be removed immediately. The conditions included animal feces stuck in the carpeting, unsafe lighting fixtures dangling by cords, and numerous obstacles to evacuation of the house in case of fire such as blocked doors, trash and other items randomly strewn about the house. The children were placed with their maternal grandparents. On February 8, the Department filed a petition for temporary legal custody based on physical neglect, which was granted. R.G. then moved from the trailer she and the children were living in to a large apartment. However, she lost the apartment a few months later and eventually moved to a one bedroom apartment. After the Department was granted temporary custody, numerous proceedings followed over a two year period. Those proceedings will be mentioned here to the extent relevant to the issues presented on appeal.

¶9 On February 4, 2002, the court issued an order finding that the children qualified as youths in need of care. The court determined the causes of abuse and neglect pursuant to § 41-3-437(2), MCA, as unsafe, unhealthy living conditions and, in addition, R.G.'s parenting

3

deficits that resulted in psychological abuse. In August, the guardian ad litem for the children filed a motion for a hearing on a planned permanent living arrangement under § 41-3-445(6)(d), MCA. At the hearing, the Department requested additional time to file an amended petition for termination of parental rights because the Department opposed a planned permanent living arrangement. The District Court reserved ruling on the planned permanent living arrangement and granted the Department additional time. On September 19, 2002, the Department filed its Second Amended Petition for Permanent Legal Custody & Termination of Parental Rights With the Right to Consent to Adoption. Like the original petition for temporary custody, this petition cited physical neglect as its basis.

¶10 After a hearing, the court issued findings of fact and conclusions of law terminating R.G.'s parental rights. The court found that based on the evidence, R.G. did not successfully comply with her treatment plan, that her condition was unlikely to change within a reasonable amount of time, and that it was in the best interests of the children to terminate her rights. The court also authorized the Department to consent to adoption of the children in future proceedings. R.G. now appeals. Further facts are discussed below.

## II. STANDARD OF REVIEW

¶11 In a termination of parental rights case, the Department has the burden of proving the criteria for termination are met by clear and convincing evidence. *In re J.H.* (1992), 252 Mont. 31, 34, 825 P.2d 1222, 1224; § 41-3-609, MCA. We review the decision of a trial court to terminate parental rights for abuse of discretion. *In re T.C.*, 2001 MT 264, ¶ 13, 307 Mont. 244, ¶ 13, 37 P.3d 70, ¶ 13. We review the findings of fact underlying a decision to

4

terminate to assess whether the findings are clearly erroneous. *T.C.*, ¶ 13. Our review of a district court's conclusions of law determines whether the conclusions are correct. *T.C.*, ¶ 13.

### III. DISCUSSION

### ISSUE ONE

¶12 **Did the District Court err in considering issues beyond physical neglect when it concluded R.G. failed to comply with the treatment plan?**

¶13 The day before the termination hearing, R.G. submitted a brief asserting the District Court was barred from considering any evidence beyond physical neglect as demonstrated by the living conditions in her home. R.G. argued that because the Department's petition to terminate only cited physical neglect as defined in § 41-3-102(16), MCA, the court could not consider any other issues regarding R.G.'s parenting deficits or emotional abuse. At the termination hearing, R.G. again raised this issue.

¶14 The Department did not respond by brief, but responded at the hearing. The Department asserted that because the order adjudicating the children as youths in need of care was appealable and because this order found both physical neglect and psychological abuse, more than physical neglect could be considered. The Department also argued R.G. could not assert that only physical neglect could be considered because she was obligated to make this argument during the hearing approving the terms of the treatment plan. The Department pointed out R.G. helped negotiate the treatment plan.

¶15 R.G. responded that the statute defining treatment plans requires that the plans be addressed to the reasons for removal and that termination could not occur without finding

5

the reasons for removal were not going to change. She also noted that the final petition still only cited physical neglect. Finally, she argued her good faith attempts at negotiating the treatment plan with the Department should not be held against her.

¶16 In its order terminating R.G.'s parental rights, the District Court did not mention or rule on this issue. Rather, the court simply made the underlying findings necessary to terminate R.G.'s parental rights. The court found that R.G. failed to meet the requirements of her treatment plan both as to physical neglect and psychological abuse. In addition to finding that the living conditions were still unacceptable, the court found R.G. failed to remedy her parenting deficits.

¶17 R.G. essentially repeats her arguments on appeal. She argues the Department only removed the children due to the unclean house and that under *T.C.*, the Department is not allowed to change the basis for termination at the time of the hearing. R.G. further argues the District Court's findings were clearly erroneous because the evidence demonstrates she addressed the physical neglect part of the treatment plan by keeping a clean house for over 10 months. Further, even if the District Court properly considered other parts of the treatment plan, R.G. asserts the court's related findings were clearly erroneous because the Department gave no concrete examples of how R.G. failed the parenting skills parts of the treatment plan. She asserts the social worker involved in the case gave inconsistent, insufficient, biased testimony that did not meet the Department's burden of proof with clear and convincing evidence.

¶18 The Department also repeats its arguments on appeal. It asserts that although the

petition for termination of parental rights only cited physical neglect, the District Court was free to consider other parenting issues because the order qualifying the children as youths in need of care included both physical neglect and psychological abuse. It also asserts R.G. should be barred from raising the issue because she helped negotiate the treatment plan. In addition, the Department argues that the petition to terminate incorporated the affidavit of the social worker and that affidavit noted R.G.'s parenting deficits. Finally, the Department argues it proved by clear and convincing evidence that R.G. failed to meet the treatment plan because she did not maintain a clean household and did not provide proper and consistent parenting for the children during her supervised visits.

¶19    We agree with the result reached by the District Court even though it did not rule on the issue as presented by the parties. While R.G. correctly points out the final petition for termination of parental rights specifically cited physical neglect as its basis, the petition also cited failure to comply with the treatment plan as another basis for termination. Further, the treatment plan specifically addressed R.G.'s psychological issues as those issues were related to her parenting skills. Importantly, the order adjudicating the children as youths in need of care states, "the Court determines that the cause of the aforementioned abuse and neglect as far as possible to ascertain, is: chronic, physical neglect as a result of unsafe and unhealthy living conditions in the family home and parenting deficits exhibited by [R.G.] that caused psychological abuse of the children." Therefore, R.G. was clearly on notice that psychological issues as well as physical neglect would be considered by the court.

¶20    In addition, we disagree with R.G. that the court was limited to considering physical

7

neglect because the treatment plan must address the "reason for removal." Under §

41-3-443, MCA, treatment plans must identify "the problems or conditions that resulted in

the abuse or neglect of a child." While a child may be initially removed for one specific

reason, it is proper for the Department to determine other causes of abuse and neglect during

the proceedings because the purpose of the proceedings is to protect the child. If the

Department were limited to the reason the children were first removed, the Department

would be unduly restricted in actually helping the children. At the same time, R.G. and other

parents are entitled to proper notice before their rights are terminated. In this case, while it

may have been better if the final petition listed the other grounds for termination besides

physical neglect, R.G. was provided sufficient notice that more than physical neglect would

be considered because of the order adjudicating the children as youths in need of care. In

addition, the court-approved treatment plan stated, "Consequence of Failure: Failure to

comply with the tasks stated in this agreement would [sic] result in the Department . . . filing

a petition requesting permanent custody of the children and to terminate [R.G.'s] parental

rights." Therefore, the District Court did not err in considering other issues besides physical

neglect.

¶21    This situation is distinguishable from the facts of *T.C.* When the Department seeks

termination under § 41-3-609, MCA, it may assert any of the provisions under subsection

(1)(a) through (1)(f). In *T.C.*, ¶ 25, we reversed the trial court because the Department did

not give proper notice it would pursue abandonment under (1)(b), as well as failure to

comply with the treatment plan under (1)(f). In this case, the Department does not seek to

8

terminate under any subsection but (1)(f), failure to comply with the treatment plan. And, as discussed above, the treatment plan properly addressed all causes of abuse and neglect as found in the order adjudicating the children as youths in need of care.

¶22 Finally, after reviewing the record, we hold the District Court's findings regarding R.G.'s failure to meet the treatment plan were not clearly erroneous. Although the social worker testified on cross examination that the home was never again filthy enough to require removal if the children had been there, there is clear and convincing evidence that R.G. failed the parts of the treatment plan intended to address her parenting deficits resulting in psychological abuse. Regarding the psychologist who evaluated R.G., the court found his testimony credible that R.G. continued to suffer from antisocial personality disorder with passive aggressive, borderline, and histrionic features. The court agreed with his opinion that the diagnosis explained why R.G. refused to comply with certain aspects of the treatment plan. Regarding the social worker who worked with R.G., the court agreed with her assessment that R.G.'s refusal to maintain a healthy home was only one symptom of "her inability to consider and provide for the children's needs." Therefore, the court's finding R.G. failed to comply with the treatment plan was not clearly erroneous because the evidence established R.G. was unable to properly and consistently parent her children by understanding and meeting each of their needs.

**ISSUE TWO**

¶23 **Did the District Court err in concluding R.G.'s condition was not likely to change in a reasonable time?**

¶24 On this issue, R.G. continues to assert the District Court could only consider whether

the cleanliness of her home was unlikely to change in a reasonable time and could not consider other grounds for termination. Under § 41-3-609(1)(f)(ii), MCA, a court must consider whether "the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time." Again, as discussed above, the order adjudicating the children as youths in need of care made clear that R.G. was unfit to parent both because of physical neglect and because of psychological abuse. Therefore, the court was free to consider whether R.G.'s emotional issues causing psychological abuse to the children were unlikely to change in a reasonable amount of time.

¶25 Even considering the entire treatment plan, R.G. argues the findings of the court were clearly erroneous. R.G. asserts there was testimony by both her evaluating psychologist and the psychologist seeing the children that the only way to prove her condition was unlikely to change was to return the children to her and assess the situation. The Department asserts the District Court was not clearly erroneous because both psychologists testified R.G. was very resistant to change. After reviewing the entire testimony of these two psychologists, we disagree with R.G.'s representation that either endorsed returning the children to R.G. for such a "trial run" at the time of the hearing or any time preceding it. While they agreed such an evaluation would be applicable in the future if R.G. made more progress, neither felt R.G. had changed to the point that she was ready to care for the children.

¶26 R.G. next argues the court was clearly erroneous because the evaluating psychologist testified she had made significant changes and that she was capable of changing because her depression was in full remission and she acknowledged some of her other issues. We agree

with this representation of the testimony. However, as the Department points out, to assess a reasonable amount of time, the court was to consider "the physical, mental, and emotional conditions and needs of the child" as required by § 41-3-609(3), MCA. Although the psychologist testified R.G. made some progress, he also testified that R.G. was still not able to resume care of the children, that future change was unlikely to occur in a reasonable time frame relative to the children's needs, and that his prognosis for successfully accomplishing the amount of change necessary was "extremely guarded."

¶27 Finally, R.G. argues the court should have presumed under § 26-1-602(6), MCA, she was capable of changing in a reasonable amount of time because the Department had the power to call her regular psychologist to testify, rather than the evaluating psychologist, but the Department chose not to do so. She argues this psychologist could give a much more informed opinion of her ability to change. The Department asserts R.G. failed to preserve this issue for appeal. We agree. We do not address an issue raised for the first time on appeal because we do not fault the trial court on an issue it was not given an opportunity to consider. *Unified Indus., Inc. v. Easley*, 1998 MT 145, ¶ 15, 289 Mont. 255, ¶ 15, 961 P.2d 100, ¶ 15. Further, R.G.'s regular psychologist submitted a letter directly to the court before the hearing, so the court was aware of his opinion regarding R.G.'s progress. This letter is a part of the record on appeal. Therefore, the court's finding that the conditions rendering R.G. unfit were unlikely to change in a reasonable amount of time were not clearly erroneous because there was extensive testimony R.G. was not likely to change within a time frame relevant to the developmental needs of the children.

11

¶28    **Did the District Court err in concluding termination of R.G.'s parental rights was in the best interests of the children?**

¶29    R.G. asserts the District Court was clearly erroneous in finding that termination of her rights is in the children's best interests. She notes that all the Department's witnesses testified the best interests of the children would be served by continued contact with R.G. At the same time, because the Department intends to let R.G.'s parents adopt the children, she argues the testimony proves her parents will not provide her continued, consistent contact with the children. She notes that the Department's witnesses, including R.G.'s father, admitted that her visitation would not be guaranteed. She also notes that her father testified visitation would likely go from once a week to once a month. R.G. also argues the Department's witnesses agreed that termination sends a message to the children she is unfit, which would be detrimental to their continued contact.

¶30    In addition, R.G. argues the court was clearly erroneous in that termination is not in the children's best interests because the testimony demonstrated her parents' home has a history of corporal punishment and one incident of sexual abuse. R.G. asserts the planned permanent living arrangement proposed by the guardian at litem, which she agreed with, was in the best interests of the children because her contact with them would have been assured and because the Department would continue to oversee her parents regarding the corporal punishment.

¶31    The Department asserts the court's finding was not clearly erroneous. While the Department does not dispute the testimony cited by R.G., the Department asserts the

testimony as a whole established the children's best interests would be served by a permanent resolution to the situation. The Department argues its witnesses established by clear and convincing evidence that, although there were other factors to consider, the permanency that can only come with adoption was most important and outweighed the other factors. In addition, the Department also argues the court was not clearly erroneous because the termination proceeding was only intended to address R.G.'s parental rights, not the fitness of R.G.'s parents to adopt. Finally, the Department asserts that under § 41-3-604, MCA, termination of R.G.'s rights is presumed to be in the children's best interests because they lived apart from their mother for at least 15 of the 22 months preceding the hearing.

¶32 We hold the District Court was not clearly erroneous when it determined that termination of R.G.'s parental rights was in the children's best interests. When considering termination, primary consideration must be given to "the best interests of the child as demonstrated by the child's physical, mental, and emotional conditions and needs." *In re J.N.*, 1999 MT 64, ¶ 13, 293 Mont. 524, ¶ 13, 977 P.2d 317, ¶ 13. In this case, the testimony of the social worker and the children's psychologist relayed that these children in particular needed a permanent resolution given the history of the case dating back to 1999. Both of them asserted the situation was confusing to the children and that the children never knew how to behave because they wanted to help their mother but could not handle her parenting deficits. Both witnesses were of the opinion that allowing a planned permanent living arrangement would be detrimental at various developmental stages because the children would always be wondering if and when things would change because R.G. would always

13

have the option to petition for their custody. As the court noted, the psychologist for the children testified in favor of termination because the children were very aware of R.G.'s struggles and it would be too stressful "for them to be forever rooting for their mother to make enough improvement [so] that she could resume the role of mother."

¶33 Further, we agree that the termination proceeding was only intended to address R.G.'s parental rights, not the fitness of R.G.'s parents to adopt. The court's finding regarding the best interests of the children was as it relates to R.G. Therefore, the District Court's finding properly considered the best interests of the children in light of their emotional, mental and physical needs and was not clearly erroneous.

¶34 That said, as the guardian ad litem pointed out, the reality in this case is that the Department intends to consent to adoption by R.G.'s parents. Much of the testimony of the Department's witnesses relayed that the children are doing well where they are, and would be best served by staying with their grandparents, rather than returning to R.G. Further, the Department does not dispute the testimony regarding the need for R.G. to continue to have contact with the children nor the concerns regarding corporal punishment in R.G.'s parents' home. However, as the District Court stated:

> Technically, this proceeding is not a custody battle between [R.G.] and her parents, and the grandparents' fitness to adopt the children would have to be determined in a subsequent proceeding if the Department were to formally consent to the children's adoption by their grandparents.

Therefore, this Opinion does not address consent to adoption by R.G.'s parents.

¶35 Although the District Court specifically found R.G. was not credible in testifying that her father once touched her in a sexually inappropriate manner because she "guard[ed] the

14

secret" until the final termination hearing, the record contains contrary evidence. R.G. apparently mentioned an alleged incident in her first visit with the evaluating psychologist in 1999. Both reports by her evaluating psychologist point out issues from her childhood relating to her antisocial personality disorder. Therefore, because the Department does not dispute these concerns–the issues regarding R.G.'s contact with the children, the use of corporal punishment in R.G.'s parents' home, and the potential for inappropriate sexual contact–such may be addressed in subsequent adoption proceedings.

## IV. CONCLUSION

¶36    Because the District Court properly terminated R.G.'s parental rights, we affirm.


/S/ JOHN WARNER


We Concur:

/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART
/S/ JIM REGNIER
/S/ JIM RICE


15