FILED

10/31/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 17-0193

DA 17-0193

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 264N

IN THE MATTER OF:

C.A.T.,

A Youth in Need of Care.

APPEAL FROM:     District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DN 17-001(D)
Honorable Dan Wilson, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Meri Althauser, Montana Legal Justice, PLLC, Missoula, Montana

For Appellee:

Timothy C. Fox, Montana Attorney General, Tammy A. Hinderman,
Assistant Attorney General, Helena, Montana

Ed Corrigan, Flathead County Attorney, Anne Lawrence, Deputy County
Attorney, Kalispell, Montana

Submitted on Briefs:   September 27, 2017

Decided:   October 31, 2017

Filed:

_____
Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 D.T. ("Father") appeals the findings of fact, conclusions of law, and order of the Eleventh Judicial District Court, Flathead County, terminating his parental rights to his eight-year-old daughter, C.A.T. We address whether the District Court abused its discretion in terminating Father's parental rights. We affirm.

¶3 Father has a criminal history dating back decades and has been convicted of eight felonies, including theft, burglary, and drug possession. While Father was on parole for a felony conviction out of Lewis and Clark County in 2009, C.A.T. was born. The record is unclear as to when C.A.T.'s birth mother ended her involvement in C.A.T.'s life, but Father parented C.A.T. until 2010, when he surrendered to his parole officer and was admitted to an in-patient drug treatment program for nine months.

¶4 Following the treatment program, Father was transferred to the Butte Prerelease Center for an additional six months. While there, Father would pick up C.A.T. and spend time with her every day. After Father was released in 2012, he regained physical custody of C.A.T. and married B.T. ("Stepmother"). On August 2, 2013, Father was charged with one count of felony burglary in Flathead County. At the time charges were filed, Father, Stepmother, and C.A.T. were living in Tennessee. After being extradited to Montana,

Father pled guilty to felony burglary on October 10, 2014. He was originally sentenced to twenty years in Montana State Prison; however, the Sentence Review Division amended the sentence to twenty years with twelve years suspended.

¶5 In April 2014, the Tennessee Department of Children's Services took over care of C.A.T. due to Father's incarceration and her birth mother's unknown whereabouts. On August 18, 2015, a Tennessee court awarded Stepmother full legal and physical custody of C.A.T., and sometime thereafter the two relocated to Montana. Since then, C.A.T. has had no more direct contact with Father.

¶6 On August 10, 2016, Stepmother contacted the Montana Department of Health and Human Services (DPHHS), indicating that she wanted to give up custody of C.A.T. because she could no longer care for her. C.A.T. was placed in foster care, and DPHHS implemented a protective services plan. Though initially involved, Stepmother eventually disengaged with DPHHS. DPHHS did not inform Father that C.A.T. was placed in foster care. Father learned this fact from Stepmother's grandmother, after which he contacted DPHHS.

¶7 On January 4, 2017, the Flathead County attorney, on behalf of DPHHS, petitioned for emergency protective services and termination of any legal parent-child relationship between C.A.T. and her birth mother, Stepmother, and Father. DPHHS alleged that C.A.T.'s birth mother, Stepmother, and Father abandoned C.A.T., therefore, DPHHS should not have to provide reunification services, and all parental rights should be terminated.

¶8     At the January 20, 2017 pre-hearing conference, Father was not present but was represented by counsel. At DPHHS's request, the District Court postponed the matter to give DPHHS time to serve Stepmother and C.A.T.'s birth mother by publication. The District Court held a hearing on the petition on February 24, 2017, during which DPHHS Child Protection Specialist Supervisor (CPSS) Melissa Cichosz ("Cichosz") and Father testified.

¶9     On March 3, 2017, the District Court issued an order determining that C.A.T. was abandoned and, due to this abandonment, C.A.T. was a youth in need of care (YINC). The District Court terminated the parental rights of C.A.T.'s birth mother, Stepmother, and Father and granted legal custody of C.A.T. to DPHHS with the right to consent to C.A.T.'s adoption.

¶10    We review a district court's decision to terminate parental rights for abuse of discretion. *In re K.B.*, 2013 MT 133, ¶ 18, 370 Mont. 254, 301 P.3d 836; *In re D.B.*, 2007 MT 246, ¶ 16, 339 Mont. 240, 168 P.3d 691. A district court abuses its discretion when it acts "arbitrarily, without employment of conscientious judgment or in excess of the bounds of reason, resulting in substantial injustice." *In re M.J.*, 2013 MT 60, ¶ 17, 369 Mont. 247, 296 P.3d 1197 (internal citations omitted). We review a district court's factual findings for clear error. *In re A.K.*, 2015 MT 116, ¶ 20, 379 Mont. 41, 347 P.3d 711. A factual finding is clearly erroneous if it is not supported by substantial evidence, if the court misapprehended the effect of the evidence, or if review of the record convinces this Court a mistake was made. *In re C.J.M.*, 2012 MT 137, ¶ 10, 365 Mont. 298, 280 P.3d 899.

4

¶11 We review a district court's application of law for correctness. *In re K.B.*, ¶ 18 (internal citations omitted). A district court may terminate a parent's rights on a finding by clear and convincing evidence that a child is a youth in need of care, an appropriate treatment plan has not been complied with, and the conduct of the parents rendering them unfit is unlikely to change within a reasonable time. Section 41-3-609(1)(f), MCA; *In re J.A.S.*, 2010 MT 47, ¶ 12, 355 Mont. 302, 288 P.3d 1119. Clear and convincing evidence requires simply that "a preponderance of the evidence be definite, clear, and convincing, or that a particular issue must be clearly established by a preponderance of the evidence or by a clear preponderance of proof." *In re D.B.*, ¶ 29 (internal citation omitted). "It does not call for unanswerable or conclusive evidence." *In re A.K.*, ¶ 22 (internal citation omitted).

¶12 A child is considered a YINC if subject to abuse, neglect or abandonment. Section 41-3-102(34), MCA; *In re A.R.*, 2005 MT 23, ¶ 21, 326 Mont. 7, 107 P.3d 437. Further, a treatment plan is not required for termination of parental rights if the district court finds "the parent is or will be incarcerated for more than 1 year and reunification of the child with the parent is not in the best interests of the child because of the child's circumstances, including placement options, age, and developmental, cognitive, and psychological needs." Section 41-3-609(4)(c), MCA.

¶13 Father argues that the District Court erred when it failed to strictly comply with the statutory requirements of § 41-3-609(1)(f), MCA, when it found that Father had abandoned C.A.T. Father further argues that the District Court erred by denying him reunification services under § 41-3-609(4)(c), MCA. We disagree.

¶14 First, the District Court complied with statutory requirements when it determined by clear and convincing evidence that C.A.T. was a YINC because of physical neglect due to her birth mother's and Stepmother's abandonment and Father's history of and current long-term incarceration. C.A.T.'s birth mother's whereabouts are unknown, Stepmother relinquished custody in 2016, Father is a long-term repeat offender, and neither birth parent has had contact with C.A.T. since April 2014. *See In re K.B.*, ¶ 19. Thus, the District Court determined that the parents "did not manifest to the child and [DPHHS] a firm intention to resume physical custody or to make permanent legal arrangements for the care of the child," that "the conduct or condition of all the parents rendering them unfit/unable to parent is unlikely to change within a reasonable time," and that continuation of the parent-child legal relationship would perpetuate the neglect of the child. *See* § 41-3-609(1), (2), MCA.

¶15 Second, the District Court determined by substantial evidence that § 41-3-609(4)(c), MCA, applied because (1) the parent is facing long-term incarceration and (2) the child's unique needs demonstrate termination is in her best interests. *See* § 41-3-609(4)(c), MCA. Father has an extensive history of incarceration and, at the time of the hearing, Father had been incarcerated for over two years and was serving what was then a twenty-year prison term.

¶16 To his credit, when not in custody, Father was physically present and parenting C.A.T. for roughly half of her life and involved as much as he could be during the rest of her life. Father also testified at the February 24, 2017 hearing that he is eligible for parole in August 2017. However, CPSS Cichosz testified that even if Father were to be

granted early parole, C.A.T. would not be returned to Father's physical custody immediately given Father's criminal history and drug problems. It would likely take at least an additional six months to transition C.A.T. back into her Father's life. Further, the District Court determined that Father's parole eligibility estimation is "nothing more than hopeful speculation, given his extensive criminal history, such that [§ 41-3-609(4)(c), MCA] applies."[1]

¶17 The District Court also correctly found that C.A.T.'s circumstances demonstrated that termination is in her best interest. *See* § 41-3-609(4)(c), MCA. In August of 2016, C.A.T.—then seven years old—was relinquished to DPHHS when no one who had legal or custodial rights was willing or able to care for her. That situation remains unchanged. At the February 24, 2017 hearing, CPSS Cichosz testified that Stepmother coming in and out of C.A.T.'s life damaged C.A.T. psychologically, but C.A.T. has since stabilized in her current pre-adoptive placement. Father has spent more than half of C.A.T.'s life incarcerated. C.A.T. has not seen Father for more than three years. CPS Cichosz testified that C.A.T. has virtually no memory of her Father, aside from memories of Father and Stepmother using drugs in her presence. C.A.T. refers to Father by his first name. CPS Cichosz testified that C.A.T.'s therapist recommended contact between C.A.T. and Father only in a mediated therapeutic setting. C.A.T.'s attorney, Brianne Franklin, also stated that C.A.T. loves her new home and foster parents, whom she refers

---

[1] Though not determinative of our disposition of Father's appeal, we take judicial notice that Father was denied parole on October 9, 2017.

to as "mom and dad," and indicates that she wishes to remain with the foster parents "forever," and her current foster parents wish to adopt her.

¶18 The District Court did not err in adjudicating C.A.T. as a YINC in accordance with § 41-3-609(1)(f), MCA. The District Court did not err in its determination that preservation and reunification efforts and treatment plans need not be provided pursuant to § 41-3-609(1)(f), MCA, because of Father's long-term incarceration and C.A.T.'s best interests due to her circumstances.

¶19 Father also argues that the District Court and DPHHS violated his due process rights, specifically his right to notice, right to be present, and right to be heard. The State contends that we should not consider Father's due process claims because they were not properly preserved for appeal and Father has not met the plain error standard necessitating review.

¶20 To preserve a claim or objection for appeal, "an appellant must first raise that specific claim or objection in the district court." *In re T.E.*, 2002 MT 195, ¶ 20, 311 Mont. 148, 54 P.3d 38. We generally will not review an issue raised for the first time on appeal, *In re J.G.*, 2004 MT 104, ¶ 27, 321 Mont. 54, 89 P.3d 11, unless the alleged claim involves a violation of a fundamental constitutional right and we are firmly convinced that failure to review the claimed error would "result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process," *State v. Finley*, 276 Mont. 126, 137–38, 915 P.2d 208, 215 (1995), *overruled in part on other grounds*; *see also In re H.T.*, 2015 MT 41, ¶ 14, 378 Mont. 206, 343 P.3d 159.

¶21 Father has not requested plain error review of his due process claim, nor does he dispute that his due process argument was not preserved below. Father makes the unsupported argument that because our review of constitutional questions is plenary, his due process argument "is therefore reviewable by this Court without the need to invoke a plain error review." Father attempts to conflate the standard of review for constitutional questions with the basis upon which we may consider an unpreserved constitutional issue for the first time on appeal. This argument is without merit.

¶22 Finally, Father argues that he received ineffective assistance of counsel at trial when his trial counsel did not file motions to transport Father to the hearings or to appear telephonically at the first hearing. Father also alleges that his trial counsel failed to present evidence or elicit testimony regarding the treatments and parenting plan Father completed through the Tennessee State Court system. Finally, Father contends his trial counsel did not object to the District Court's adjudication of C.A.T.'s case based on DPHHS's theory that all parents had abandoned her.

¶23 An ineffective assistance of counsel claim raised for the first time on appeal is subject to a two-step analysis: (1) whether counsel's assistance was effective in light of counsel's training, experience, and advocacy, and (2) if counsel's assistance was ineffective, we consider whether the ineffectiveness resulted in prejudice to the parent. *In re A.S.*, 2004 MT 62, ¶¶ 26, 31, 320 Mont. 268, 87 P.3d 408; *see also In re C.M.C.*, 2009 MT 153, ¶ 30, 350 Mont. 391, 208 P.3d 809. The District Court had substantial unrefuted evidence to terminate Father's parental rights pursuant to

9

§§ 43-1-609(1)(f), -609(4)(c), MCA.  Even assuming, for the sake of argument, that Father's counsel was ineffective, he cannot demonstrate that he was prejudiced by the alleged ineffectiveness.  "A parent may sustain no ineffective assistance claim . . . when the parent cannot demonstrate prejudice as a result of the ineffective assistance." *In re D.B.*, 2012 MT 231, ¶ 30, 366 Mont. 392, 288 P.3d 160.

¶24   We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions.  In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.  The District Court's findings of fact are not clearly erroneous, its conclusions of law are correct, and its ruling was not an abuse of discretion.  We affirm.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ MICHAEL E WHEAT
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR

10