FILED

February 10 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0076

DA 14-0076

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 41

IN THE MATTER OF:

H.T.,

    A Youth in Need of Care.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. BDN-12-152
Honorable Julie Macek, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

    Jeanne M. Walker, Hagen & Walker, PLLC, Billings, Montana

    For Appellee:

    Timothy C. Fox, Montana Attorney General, Pamela P. Collins, Assistant
Attorney General, Helena, Montana

    John Parker, Cascade County Attorney, Jennifer Quick, Deputy County
Attorney, Great Falls, Montana

Submitted on Briefs:  December 24, 2014
Decided:  February 10, 2015

Filed:

                      Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1     B.T. (Mother) appeals an order of the Eighth Judicial District Court terminating her parental rights to her daughter, H.T.  She asserts that the District Court failed to comply with both state and federal statutory requirements for terminating parental rights to an Indian child.  We address the following issues on appeal:

> 1.     *Whether the termination of Mother's rights must be reversed because the District Court failed to hold an adjudicatory hearing that complied with § 41-3-437, MCA.*
>
> 2.     *Whether the District Court's failure to follow statutory requirements for proceedings subject to the Indian Child Welfare Act requires reversal.*

¶2     We affirm on the first issue, and vacate and remand for entry of a new order on the issue of termination.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3     The Montana Department of Public Health and Human Services (Department) filed a petition for emergency protective services on October 10, 2012, alleging drug use by Mother and domestic violence between Mother and her boyfriend.[1]  The affidavit of a child protection specialist attached to the petition explained the circumstances. Law enforcement officers contacted the Department after being called to a Great Falls motel for a domestic violence incident.  Seven-year-old H.T. told the specialist that Mother began drinking and arguing with her boyfriend on the night that H.T. was taken into emergency protective custody.  Mother and H.T. left the motel to visit Mother's friend, from whom they obtained pills that they brought back to the room.  H.T. reported that Mother and her boyfriend

---

[1] H.T. lived with Mother.  H.T.'s father could not be located and was noticed by publication throughout the case.  He has not appealed the termination of his parental rights for abandonment.

2

crushed the pills and "sniff[ed] them up their noses." The arguing continued and eventually escalated into physical violence. When police arrived, H.T. was found scared and exhausted, wearing what appeared to be her mother's dirty clothes. H.T. told the specialist that there had been violence between Mother and her boyfriend in the past and that she feared the boyfriend would kill her mother.

¶4 The Department's petition sought immediate protection and temporary legal custody of H.T. to prevent further exposure to abuse and neglect. The petition stated that "the child may be an Indian Child for the purposes of the Indian Child Welfare Act [ICWA]." The accompanying affidavit further indicated that inquiry had been made of Mother and of the maternal grandparents regarding H.T.'s tribal affiliation. Based on those inquiries, notices of the action were sent to the Blackfeet Tribe and to the Assiniboine and Sioux Tribes of the Fort Peck Indian Reservation. The affidavit also stated that a letter had been sent to the Bureau of Indian Affairs for confirmation of tribal affiliation.[2] The District Court granted the motion for emergency protective services and temporary legal custody. The court's October 17, 2012 order found that the Department was justified in not making active efforts to prevent H.T.'s removal from the home "because the child was in immediate or apparent danger of harm."

¶5 Following the Department's efforts to locate a suitable kinship placement, H.T. was placed with a maternal great aunt on October 26, 2012. On November 15, 2012, the District Court held a show cause hearing. Mother did not contest probable cause at the show cause

---

[2] The Department later filed a letter explaining that H.T. was not eligible for enrollment with the Fort Peck Tribes.

3

hearing, but her counsel stated, "We do want a separate adjudicatory hearing, just in case." The court accepted the parties' stipulation that probable cause existed to believe that H.T. was subject to abuse or neglect, and advised that it would set a date for an adjudicatory hearing.

¶6 The District Court initially set the adjudicatory hearing for February 7, 2013, but later rescheduled the hearing for April 25, 2013. The Department filed a supplemental affidavit on April 17 that updated information about H.T. and Mother since the child's removal. The affidavit indicated that the Department had received information that H.T. was eligible for enrollment in the Fort Belknap Tribe. At the commencement of the April 25 hearing, the court began by stating, "This is the time that has been set for a show cause hearing in the matter of [H.T.]" The Department's counsel indicated that the matter was set for disposition and that a treatment plan had been signed by all parties. The court then announced, "I stand corrected. This is a dispositional hearing." The court inquired about Mother's stipulation to her treatment plan and about H.T.'s current placement. Mother confirmed that she understood the treatment plan; her appointed counsel, who by that time had been substituted for Mother's previous attorney, indicated that there was no objection to temporary legal custody or to the treatment plan. The hearing never addressed H.T.'s adjudication and the record contains no stipulation to adjudication of H.T. as a youth in need of care.

¶7 The District Court issued an order after the April 25, 2013 hearing that adjudicated H.T. a youth in need of care. The order also required Mother to comply with her treatment plan, approved of H.T.'s current placement, and granted the Department temporary legal custody for six months.

4

¶8     On November 5, 2013, the Department filed notice that H.T. was eligible for enrollment with the Assiniboine and Gros Ventres Tribes at the Fort Belknap Indian Community (hereafter referred to as Fort Belknap). The notice appended a letter from Fort Belknap dated April 17, 2013, indicating that it "chooses to intervene as a third party to monitor" the proceedings and would "leave jurisdiction with the state court while the plan remains reunification." Fort Belknap reserved the right to transfer jurisdiction "at a later time if Termination of Parental Rights appears imminent or has taken place."

¶9     The Department filed a petition for permanent legal custody and termination of parental rights on November 6, 2013. The termination petition alleged that Mother had not complied with her treatment plan and that H.T.'s father had abandoned H.T. The Department filed a notice on November 18, 2013, establishing that Fort Belknap had confirmed receipt of the termination petition on November 13, 2013. The court held a termination hearing on January 9, 2014, and adopted and approved the termination petition. Fort Belknap did not participate in the proceedings. The court later issued a written order terminating both Mother's parental rights and the father's parental rights to H.T. and granting the Department permanent legal custody. Mother appeals.

## STANDARDS OF REVIEW

¶10    Compliance with state statutory requirements presents a question of law that we review for correctness. *State v. Parks*, 2013 MT 280, ¶ 20, 372 Mont. 88, 310 P.3d 1088; *In re B.N.Y.*, 2003 MT 241, ¶¶ 18, 28, 317 Mont. 291, 77 P.3d 189. We will not disturb a district court's decision on appeal unless there is a mistake of law or a finding of fact not supported by substantial evidence that would amount to a clear abuse of discretion. *In re*

5

*T.S.*, 2013 MT 274, ¶ 21, 372 Mont. 79, 310 P.3d 538. We will not reverse a district court's ruling by reason of an error that "would have no significant impact upon the result." *In re J.C.*, 2008 MT 127, ¶ 43, 343 Mont. 30, 183 P.3d 22 (quoting *In re A.N. and C.N.*, 2000 MT 35, ¶ 39, 298 Mont. 237, 995 P.2d 427).

¶11 "In a case governed by ICWA, we will uphold the district court's termination of parental rights if a reasonable fact-finder could conclude beyond a reasonable doubt that continued custody by the parent is likely to result in serious emotional or physical damage to the child." *In re K.B. & T.B.*, 2013 MT 133, ¶ 18, 370 Mont. 254, 301 P.3d 836. We review the court's application of the law to the facts of the case for correctness. *In re K.B. & T.B.*, ¶ 18.

## DISCUSSION

¶12 *1. Whether the termination of Mother's rights must be reversed because the District Court failed to hold an adjudicatory hearing that complied with § 41-3-437, MCA.*

¶13 Mother does not dispute that she did not raise before the District Court any of the issues on which she appeals. She argues that her appeal nevertheless is reviewable because it is based on violations of 25 U.S.C. § 1912, a provision of ICWA. The Department correctly points out, however, that a closer reading of Mother's brief reveals an argument that the District Court erred by failing to hold an adjudicatory hearing that complied with § 41-3-437, MCA. This argument is based on a violation of state law, not ICWA. Accordingly, we first decide whether to consider this argument on appeal without reference to ICWA.

¶14 Generally, this Court will not review an issue raised for the first time on appeal. *In re D.K.D.*, 2011 MT 74, ¶ 16, 360 Mont. 76, 250 P.3d 856. We apply the common law plain

error doctrine where the error is "plain" and we are "firmly convinced" that an aspect of the proceeding would result in "manifest miscarriage of justice or compromise the integrity of the judicial process." *In re D.K.D.*, ¶ 16; *In re Custody & Parental Rights of D.A.*, 2008 MT 247, ¶ 33, 344 Mont. 513, 189 P.3d 631. We invoke the plain error doctrine sparingly. *In re D.K.D.*, ¶ 16.

¶15 Under Montana law, a court may terminate a parent's rights for failure to successfully complete or to comply with a court-ordered treatment plan only if the child is first adjudicated a youth in need of care in accordance with § 41-3-437, MCA. Section 41-3-609(1)(f), MCA. Unless the petition seeks termination on alternate grounds such as relinquishment, abandonment, or circumstances in which a treatment plan is not required, adjudication as a youth in need of care is "a threshold requirement without which a court may not grant temporary legal custody, order a court ordered treatment plan, or terminate a person's parental rights under the statute." *In re B.N.Y.*, ¶ 22 (citing §§ 41-3-406(1)(c), 41-3-420(1), and 41-3-609(1)(f), MCA); *In re T.C.*, 2001 MT 264, ¶ 15, 307 Mont. 244, 37 P.3d 70.

¶16 A parent may stipulate that the child meets the definition of a youth in need of care. Section 41-3-434(1), MCA. "A parent's valid stipulation under § 41-3-434, MCA, can satisfy the required findings for the adjudication of a youth in need of care even absent an evidentiary hearing." *In re J.M.*, 2009 MT 332, ¶ 22, 353 Mont. 64, 218 P.3d 1213. If the parent does not stipulate to adjudication, the adjudicatory hearing must be held within ninety days of the show cause hearing. Section 41-3-437(1), MCA. At the adjudicatory hearing, the court "shall hear evidence regarding the residence of the child, paternity, if in question,

the whereabouts of the parents, guardian, or nearest adult relative, and any other matters the court considers relevant in determining the status of the child." Section 41-3-437(3), MCA. "Adjudication must determine the nature of the abuse and neglect and establish facts that resulted in state intervention and upon which disposition, case work, court review, and possible termination are based." Section 41-3-437(2), MCA.

¶17 It appears from review of the record that the Department assumed, based on Mother's other stipulations, that she stipulated to adjudication and that the matter was set for disposition when the parties appeared in open court on April 25, 2013. As noted above, the record does not contain any such stipulation. The Department argues on appeal that Mother's stipulation to her treatment plan "necessarily meant that [Mother] also stipulated that H.T. was a Youth in Need of Care." In *In re M.J.W.*, however, we held that neither a finding sufficient to establish child abuse or neglect nor an order approving of the parents' treatment plans constituted adjudication where the court did not address adjudication in any way. *In re M.J.W.*, 1998 MT 142, ¶¶ 12-13, 289 Mont. 232, 961 P.2d 105. Likewise, we have observed that adoption of a stipulation for temporary legal custody "does not equate to an adjudication by the court that the children were youths in need of care." *In re the Matter of M.O., M.O., and M.O.*, 2003 MT 4, ¶ 19, 314 Mont. 13, 62 P.3d 265. Similarly, Mother's stipulation to her treatment plan, though containing admissions sufficient to meet the definition of child abuse or neglect under § 41-3-102(7), MCA, does not constitute a stipulation to adjudication of H.T. as a youth in need of care.

¶18 Without a stipulation to adjudication, the District Court was required to conduct an adjudicatory hearing. The hearing held on April 25, 2013, did not comply with § 41-3-437,

8

MCA. Although the District Court scheduled an adjudicatory hearing, due to what appears to have been a mix-up by the court and counsel, the court changed the hearing to a dispositional hearing almost immediately after it began. The record of the hearing reflects that Mother stipulated to her treatment plan and to temporary legal custody, but the parties made no mention of adjudication. These stipulations were inadequate to meet the statutory requirement of either stipulation to adjudication or an adjudicatory hearing. The court mistakenly stated in a subsequent order that Mother's attorney "stipulated to the adjudication of the Youth as a Youth in Need of Care . . . ."

¶19 We have determined, however, that a court's failure to conduct a formal adjudicatory hearing may be harmless error. *In re J.C.*, ¶ 54. This Court continually has stated that "we will not fault a district court for failing to address statutory deficiencies that are not brought to its attention during the proceedings because doing so would encourage litigants to withhold objections rather than raise the issues appropriately in the district court." *In re A.S.*, 2006 MT 281, ¶ 35, 334 Mont. 280, 146 P.3d 778 (quoting *In re A.N.W.*, 2006 MT 42, ¶ 41, 331 Mont. 208, 130 P.3d 619). In *In re A.S.*, we pointed out that a parent acquiesced to a child's adjudication as a youth in need of care when there was no objection to the adjudication and the adjudication was referenced repeatedly in court documents leading up to the termination hearing. *In re A.S.*, ¶ 35.

¶20 Mother stipulated to her treatment plan, which stated that she "admittedly has a history of drug usage" and "needed treatment for alcohol and drugs." Mother's treatment plan acknowledges that, on the night of H.T.'s removal, she abused prescription medications and drank alcohol "to the point of being unable to care for her daughter." The plan also

9

documents Mother's history of relationships with "abusive and unstable men," and states that Mother "failed to protect her child from exposure to domestic violence." By agreeing to the plan, Mother acknowledged that her mental health and substance abuse issues "prevented her from . . . parenting her child safely or provid[ing] care for her on [a] consistent basis."

¶21 Mother's treatment plan stipulates that she was unable to care for H.T. Mother never raised an objection to the court's subsequent order adjudicating H.T. a youth in need of care, and she failed to point out the court's error until this appeal. Mother does not contest her failure to follow her treatment plan. "We have held consistently that a district court may protect a child's best interest despite procedural errors that would have no impact upon the result." *In re M.S.*, 2014 MT 265A, ¶ 22, 376 Mont. 394, 336 P.3d 930 (citations omitted). Although the court erred by not holding a proper adjudicatory hearing prior to the termination of Mother's parental rights, this error was not "plain" or obvious. As in *In re A.S.*, we hold that Mother waived her right to appeal the adjudication issue because she did not timely object or raise the issue before the District Court. Under the circumstances, the error did not undermine the fundamental fairness of the proceedings and reversing the termination order on this ground is not justified. *In re J.C.*, ¶¶ 42-43; *In re A.S.*, ¶ 35.

¶22 *2. Whether the District Court's failure to follow statutory requirements for proceedings subject to the Indian Child Welfare Act requires reversal.*

¶23 Congress enacted ICWA in 1978 "to protect the best interests of Indian children and to promote the stability and security of Indian tribes." 25 U.S.C. § 1902. ICWA "establishes the minimum federal standards for the removal of an Indian child from her family and the placement of such a child in a foster or adoptive home." *In re M.S.*, ¶ 14.

10

¶24 Mother argues that the District Court failed to comply with numerous ICWA requirements. She argues: that the court was required, but failed, to meet ICWA's notice and evidentiary requirements at the adjudicatory stage; that Fort Belknap did not receive proper notice of the termination hearing; that, at the termination stage of the proceedings, the court failed to make oral or written findings that continued custody of H.T. by Mother "is likely to result in serious emotional or physical damage to the child;" that the District Court applied the incorrect standard of proof at the termination hearing, relying on the "clear and convincing evidence" standard provided under state law instead of ICWA's "beyond a reasonable doubt" standard; and finally, that the court improperly based its termination decision solely on Mother's substance abuse.

¶25 Although Mother raises these arguments for the first time on appeal, § 1914 of ICWA provides:

> Any Indian child who is the subject of any action for foster care placement or termination of parental rights under State law, any parent or Indian custodian from whose custody such child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections 101, 102, and 103 of this Act [25 U.S.C. §§ 1911, 1912, and 1913].

25 U.S.C. § 1914. The issues Mother raises are thus appealable despite the failure to object. *In re K.B. & T.B.*, ¶ 22 (noting that an appeals court is a court of competent jurisdiction under § 1914 and ICWA notice requirements may be raised for the first time on appeal).

*A. Notice*

¶26 ICWA specifies that notice of an involuntary proceeding in state court and of the right of intervention must be given to an Indian child's tribe when a party seeks the foster care

11

placement of, or the termination of the parental rights to, an Indian child. 25 U.S.C. § 1912(a). If the child's tribe cannot be identified, notice instead must be provided to the Secretary of the Interior. 25 U.S.C. § 1912(a). ICWA's requirement of timely notice serves as a limitation on both foster care placements and termination proceedings. 25 U.S.C. § 1912(a) ("No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the Secretary.").

¶27 Mother first argues that Fort Belknap did not receive notice of the April 25, 2013 hearing, without which adjudication was in error. Second, Mother argues that Fort Belknap did not receive notice by registered mail of the January 9, 2014 termination hearing. We address these arguments in order.

¶28 ICWA imposes a specific notice requirement for pending proceedings involving "the foster care placement of, or termination of parental rights to, an Indian child[.]" 25 U.S.C. § 1912(a). We have observed that if there is any question about whether notice is to be given before both foster care and termination proceedings, the "'question should be resolved in favor of giving notice twice.'" *In re M.S.*, ¶ 19 (quoting *People ex rel. S.R.M.*, 153 P.3d 438, 442 (Colo. Ct. App. 2006)). We have not, however, required adherence to this specific notice requirement where it is not prescribed by the provisions of ICWA.

¶29 In this case, H.T. was taken from her mother under emergency circumstances and placed in kinship foster care before the first status conference. The Department made efforts promptly to identify and notify the proper tribe. The tribe that ultimately was determined to be the child's tribe was not notified before the initial placement, but ICWA does not prevent

emergency removal of an Indian child or the emergency placement of such a child into foster care when necessary to prevent imminent physical damage or harm to the child. 25 U.S.C. § 1922.[3] Fort Belknap sent a letter dated April 17, 2013, confirming H.T.'s eligibility for enrollment, showing that it received notice of the action—if not specifically the scheduled adjudicatory hearing—before the April 25, 2013 hearing.

¶30    In most circumstances, the Department must give notice before a foster care placement occurs. After an emergency removal, ICWA proceedings must be initiated "expeditiously," meaning that the Department is excused from the normal notice requirement but is obligated to provide prompt notice in compliance with § 1912(a) after the foster care placement occurs. 25 U.S.C. § 1922. Here, the child's removal occurred on an emergency basis, the Department proceeded expeditiously to identify and notify the proper tribe, and Fort Belknap confirmed notice and advised that it intended to monitor the proceedings as long as reunification was the plan. Because foster care placement already had been made prior to identification of the child's tribe and before the April 25 hearing, we conclude that any delay in notifying Fort Belknap of the proceedings was not improper under ICWA.

¶31    Mother also argues that the record does not establish ICWA-compliant notice to Fort Belknap of the termination hearing, because notice was not sent "by registered mail with

---

[3] Though § 1922 applies by its terms to Indian children who are residents of or are domiciled on a reservation, but "temporarily located off the reservation," numerous courts have held that it applies to all Indian children. *E.g. Cheyenne River Sioux Tribe v. Davis*, 822 N.W.2d 62, 65 (S.D. 2012); *State ex rel. Children, Youth & Families Dep't v. Marlene C. (In re Esther V.)*, 248 P.3d 863, 873 (N.M. 2011); *State ex rel. Juvenile Dep't of Multnomah Cnty. v. Charles*, 688 P.2d 1354, 1358 (Or. Ct. App. 1984); *D.E.D. v. State of Alaska*, 704 P.2d 774, 779 (Alaska 1985); *Matter of the Welfare of J.A.S.*, 488 N.W.2d 332, 335 (Minn. Ct. App. 1992); *In re S.B. v. Jeannie V.*, 30 Cal. Rptr. 3d 726, 734-36, 130 Cal. App. 4th 1148, 1163-64 (Cal. Ct. App. 2005). This interpretation is supported by § B.7(a) of the BIA Guidelines for ICWA proceedings. 44 Fed. Reg. 67589 (*ICWA Guidelines*).

return receipt requested." 25 U.S.C. § 1912(a). The Fort Belknap Tribe received notice of the termination hearing by certified mail, and the Department filed a return receipt with the District Court signed by an agent of Fort Belknap acknowledging the termination petition. We recognize that there are some differences between registered and certified mail, with registered mail being more secure. *See In re Morris*, 815 N.W.2d 62, 77 n. 22 (Mich. 2012). For the purpose of indicating that Fort Belknap was given notice, however, the two are virtually identical: both provide proof of mailing and the date and time of delivery. Return receipts to confirm delivery may be requested both for registered and for certified mail. U.S. Postal Service, *A Customer's Guide to Mailing*, 9 (Sept. 2014), *available at* https://www.usps.com.

¶32    Mother complains that the return receipt the Department filed made it impossible to verify whether the notice of the termination was adequate; she speculates that the Department may have provided insufficient or inaccurate information, citing *In re Morris*. However, the return receipt from Fort Belknap contained the word "Termination," H.T.'s last name, the date of delivery, and the case number. Receipt was acknowledged a week after the Department's termination petition was filed with the court. The return receipt confirms that Fort Belknap was informed of the pending termination in a timely manner. This stands in sharp contrast to *In re Morris*, where the Michigan Supreme Court observed that the record before it contained "no postal return receipts indicating whether notice was received and, if so, by whom." *In re Morris*, 491 N.W.2d at 69.

¶33    We conclude that the Department's notice to Fort Belknap of the proceedings in this case did not violate ICWA requirements. The only delay occurred when the Department did

not file until November 5, 2013, Fort Belknap's April 17, 2013 letter advising of H.T.'s eligibility for enrollment. But that letter demonstrates that the Department had notified Fort Belknap of the proceedings once it learned of H.T.'s affiliation and that Fort Belknap had declined to participate pending a decision by the State whether to seek termination. The Department had advised the court in its April 17 supplemental affidavit that it had made this contact with Fort Belknap. The record is sufficient to demonstrate that, once the State pursued termination, Fort Belknap received actual and timely notice of the termination proceedings. Mother's arguments are not persuasive that there is a substantive distinction between registered and certified mail that renders the termination notice invalid.

*B.    Evidentiary requirements for the April 25, 2013 hearing*

¶34    ICWA requires that "[a]ny party seeking to effect a foster care placement of, or termination of parental rights to, an Indian child under State law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful." 25 U.S.C. § 1912(d).

> No foster care placement may be ordered in such proceeding in the absence of a determination, supported by clear and convincing evidence, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

25 U.S.C. § 1912(e). These sections mandate that "active efforts" and "serious emotional or physical damage" must be shown before an Indian child is placed into foster care, defined as "any action removing an Indian child from its parent or Indian custodian for temporary placement in a foster home or institution or the home of a guardian or conservator where the

15

parent or Indian custodian cannot have the child returned upon demand, but where parental rights have not been terminated." 25 U.S.C. § 1903(1)(i).

¶35 Mother argues that testimony about active efforts was required at the adjudicatory stage. The court's written order adjudicating H.T. a youth in need of care found that the Department made "reasonable efforts," not active efforts. Mother also claims that the court erred when it used a "preponderance of the evidence" standard in its order adjudicating H.T. a youth in need of care, instead of the "clear and convincing evidence" standard prescribed by § 1912(e).

¶36 ICWA plainly requires evidence of active efforts and "clear and convincing evidence" of "serious emotional or physical damage to the child" before foster care placements. Montana adheres to this requirement by demanding such evidence at the show cause hearing that must be conducted after the filing of an initial child abuse and neglect petition. Section 41-3-432(1)(b), (5), MCA.

¶37 When an Indian child has been removed under emergency circumstances, however, ICWA requires the following:

> The State authority, official, or agency involved shall insure that the emergency removal or placement terminates immediately when such removal or placement is no longer necessary to prevent imminent physical damage or harm to the child and shall expeditiously initiate a child custody proceeding subject to the provisions of this title [25 USCS §§ 1911-1923], transfer the child to the jurisdiction of the appropriate Indian tribe, or restore the child to the parent or Indian custodian, as may be appropriate.

25 U.S.C. § 1922. The ICWA guidelines confirm that, after an emergency removal, "the agency responsible for the child's removal must promptly commence a state court proceeding for foster care placement." *ICWA Guidelines* § B.7(c), 44 Fed. Reg. 67589.

16

¶38     As noted, H.T. was placed into foster care under emergency circumstances before the proper tribe had been identified.  ICWA does not prevent emergency removal of an Indian child or the emergency placement of such a child into foster care when necessary to prevent imminent physical damage or harm to the child.  25 U.S.C. § 1922.  ICWA allows temporary or emergency custody proceedings without the findings required by § 1912(d) and (e) in emergency circumstances.  *In re Esther V.*, 248 P.3d at 872-74; *Cheyenne River Sioux Tribe*, 822 N.W.2d at 65.  The District Court expressly found in its October 17, 2012 order granting emergency protective services that, because of H.T.'s exposure to domestic violence and dangerous drugs, Mother's neglect of H.T., and Mother's incarceration and inability to parent, the Department was justified in not making active efforts to prevent H.T.'s removal from the home.  At the November 15, 2012 show cause hearing, although Mother could have required qualified expert testimony of "serious emotional or physical damage" under § 41-3-432(1)(b), MCA, she did not contest the Department's request for emergency protective services or H.T.'s foster care placement.

¶39     At the hearing on April 25, 2013, Mother stipulated to temporary legal custody, allowing the Department to maintain the child's kinship foster care placement without demanding the additional findings required for such an order by § 41-3-442(1), MCA.  Mother did not contest the District Court's explicit finding in its April 25, 2013 order that "the parties have stipulated that ICWA is being followed, to the current placement of the Youth, and that continued custody by the Birth Parents in this case would result in serious emotional or physical damage to the child."  ICWA's evidentiary requirements apply to orders "effecting a foster care placement of an Indian child."  *ICWA Guidelines* § D.3(a), 44

17

Fed. Reg. 67592. Here, Mother's stipulation to temporary legal custody rendered unnecessary the presentation of evidence or the finding of facts on those ICWA standards.

### C. *Evidentiary requirements for the termination hearing*

¶40 ICWA provides:

> No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

25 U.S.C. § 1912(f). Mother argues that the court failed to make oral or written findings at termination that the continued custody of H.T. by Mother "is likely to result in serious emotional or physical damage to the child." 25 U.S.C. § 1912(f). Mother also makes a brief argument that the court improperly based its termination decision solely on Mother's substance abuse. Lastly, she argues that the District Court applied the incorrect standard of proof at the termination hearing, relying on the "clear and convincing evidence" standard provided under state law instead of the "beyond a reasonable doubt" standard required by § 1912(f).

¶41 We dispense quickly with the first two arguments. At the termination hearing on January 9, 2014, the District Court stated on the record:

> The Court finds that . . . continued custody of the child by the mother would likely result in serious emotional or physical damage to the child in light of her drug usage and her failure to acknowledge that . . . domestic violence is an unsafe situation for children to be present at, be a party to, watch their mother be abused, those are all situations that are extremely dangerous to children, and detrimental to them.

18

This statement clearly shows that the District Court made the required findings and did not base its determination solely on Mother's substance abuse. Mother's reliance on the ICWA Guidelines for this argument is misplaced; the Guidelines state that clear and convincing evidence of likely emotional or physical damage to the child is not demonstrated by evidence that shows only "the existence of community or family poverty, crowded or inadequate housing, alcohol abuse, or non-conforming social behavior[.]" *ICWA Guidelines*, § D.3(c), 44 Fed. Reg. 67593. In her reply brief, Mother argues that the court's rationale nonetheless is inadequate because it does not reference the testimony of the ICWA expert. ICWA requires that the determination be supported by evidence beyond a reasonable doubt, "including testimony of qualified expert witnesses[.]" 25 U.S.C. § 1912(f). It does not require, as Mother seems to suggest, that the District Court refer to the expert by name in making its determination. There is no question here that the ICWA expert's testimony met the requirements of the law. *See In re K.B. & T.B.*, ¶¶ 28, 30.

¶42 Mother's final argument reveals that the District Court incorrectly applied a "clear and convincing evidence" standard in its written order on the termination of Mother's parental rights. At the termination hearing, although the court stated that it made all of its findings "[i]n accordance with the standards necessary for an ICWA case," the court did not articulate the standard it was applying. The court's conclusions of law state that "the evidence shows, by clear and convincing evidence, that continuation of the parent-child legal relationship between the Youth and the Birth Mother will result in an ongoing risk of abuse and/or neglect to the Youth." A noted above, ICWA prohibits a parent's rights from being terminated unless the court determines, "beyond a reasonable doubt, . . . that the continued

custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." 25 U.S.C. § 1912(f). ICWA sets minimum federal standards that "must be followed strictly by state courts." *In re K.B. & T.B.*, ¶ 21. Holding the Department to its burden of proof is a critical requirement.

¶43 While we may uphold a district court's termination of parental rights if the evidence supports a determination "that continued custody by the parent is likely to result in serious emotional or physical damage to the child[,]" *In re K.B. & T.B.*, ¶ 18, whether the Department proved the requisite standards beyond a reasonable doubt should be determined in the first instance by the District Court. Accordingly, we vacate the District Court's judgment and remand for entry of a new order to address whether the evidence established beyond a reasonable doubt, as required by 25 U.S.C. § 1912(f), that continued custody of H.T. by Mother likely would result in serious emotional or physical damage to the child.

## CONCLUSION

¶44 We conclude that Mother received fundamentally fair procedures prior to the termination of her parental rights. She never raised any objection to the lack of a formal adjudicatory hearing, and her stipulations reflect her assent to the determination that H.T. was abused or neglected. The child's Tribe was notified of the proceedings at the early stages, indicated its desire to monitor the case, and did not participate after it received appropriate, timely notice of the termination hearing. Proper expert testimony was presented at the termination hearing. Because the District Court applied the wrong statutory standards in its final order, however, its judgment is vacated. We remand for entry of a new order on the issue whether Mother's parental rights should be terminated.

20

/S/ BETH BAKER

We Concur:


/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA