FILED

March 8 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 15-0413

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 59N

IN THE MATTER OF:

E.O. and N.B.,

      Youths in Need of Care.

| | |
|---|---|
| APPEAL FROM: | District Court of the Sixth Judicial District, In and For the County of Park, Cause Nos. DN 13-11 and DN 13-12 Honorable Brenda R. Gilbert, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

            Paul Sullivan, Measure, Sampsel, Sullivan & O'Brien, P.C.,
            Kalispell, Montana

      For Appellee:

            Timothy C. Fox, Montana Attorney General, Micheal S. Wellenstein,
            Assistant Attorney General, Helena, Montana

            Bruce E. Becker, Park County Attorney, Livingston, Montana

                        Submitted on Briefs: January 13, 2016

                                  Decided: March 8, 2016

Filed:

                                 _____
                                        Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1    Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2    This case pertains to the parental rights of M.B. over her two children, E.O. (born in 2001) and N.B. (born in 2007). E.O. and N.B are Indian children with different fathers, and neither of the fathers is a party to the case. On November 13, 2013, the Department of Public Health and Human Services ("DPHHS") filed petitions for emergency services, adjudication as youths in need of care, and temporary legal custody regarding E.O. and N.B. The petitions arose out of reports that M.B.'s consumption of alcohol and medications was interfering with her ability to care for the children. M.B. had a history with child protective services both in Montana and South Dakota prior to November 2013.

¶3    The District Court granted the petition for emergency protective services on November 14, 2013, and by February 20, 2015, the District Court had adjudicated the children as youths in need of care and granted DPHHS legal custody of the children for six months. DPHHS developed a treatment plan for the benefit of the children, which included a number of tasks for M.B. She stipulated to the plan and the District Court approved it on April 3, 2014. On September 24, 2014, DPHHS requested a six-month

extension of the temporary legal custody, to which M.B. agreed and the court granted on November 24, 2014. DPHHS then filed a petition to terminate M.B.'s parental rights on January 26, 2015. A hearing was conducted over the course of three days. The District Court made oral findings of fact and conclusions of law that terminated M.B.'s parental rights on June 2, 2015. A written order was issued on June 12, 2015; M.B. appeals from this order. We affirm.

¶4    The District Court found that M.B. had failed to complete several integral parts of the treatment plan. The treatment plan required M.B. to keep an adequate home for the children, stop using controlled substances and alcohol, and continue seeing a trauma therapist for treatment, all of which M.B. failed to successfully perform. M.B. argues that DPHHS failed to properly consider the root causes of her addiction and substance abuse issues. Consequently, M.B. posits that since DPHHS did not adequately provide her with assistance for the treatment of abuse and trauma, they failed to make reasonable efforts to reunite her with her children.

¶5    We review a district court's decision to terminate parental rights for an abuse of discretion. *In re C.J.M.*, 2012 MT 137, ¶ 10, 365 Mont. 298, 280 P.3d 899. We review a district court's findings of fact under the clearly erroneous standard. *In the Matter of J.C.*, 2008 MT 127, ¶ 34, 343 Mont. 30, 183 P.3d 22. We review a district court's application of the law for correctness. *In re C.J.M.*, ¶ 10.

¶6    In cases involving the termination of parental rights over Indian children, there are federal obligations imposed on the State pursuant to the Indian Child Welfare Act ("ICWA"). 25 U.S.C. § 1912. Congress enacted ICWA to protect and preserve Indian

3

culture and curtail the high rate of non-tribal agencies' breakup of Indian families. "ICWA sets minimum federal standards that must be followed strictly by state courts." *In re H.T.*, 2015 MT 41, ¶ 42, 378 Mont. 206, 343 P.3d 159 (quoting *In re K.B.*, 2013 MT 133, ¶ 21, 370 Mont. 254, 301 P.3d 836); 25 U.S.C. § 1902. Under ICWA, the State must show that it made active efforts to "provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful." 25 U.S.C. § 1912(d). Additionally, ICWA requires the State to prove beyond a reasonable doubt that absent termination of parental rights, the children would suffer serious physical or emotional harm. 25 U.S.C. § 1912(f). We have previously held that ICWA obligates the State to take timely and affirmative steps to prevent the breakup of Indian families. *In re J.S.*, 2014 MT 79, ¶ 25, 374 Mont. 329, 321 P.3d 103.

¶7 E.O. and N.B. are Indian children, and M.B. does not dispute that ICWA applies in this case. However, in her brief, she contends that in addition to the "active efforts" standard required by ICWA, the State must also follow a "reasonable efforts" standard required by state law. *See* § 41-3-423(1), MCA. However, in our previous cases concerning the termination of parental rights over Indian children, we have never combined federal and state standards. *See e.g., In re H.T.*, ¶ 42; *In re K.B.*, ¶ 21. Rather, we have held that ICWA outlines the correct procedure for handling the adjudication of parental rights involving Indian children. *In re H.T.*, ¶ 42; *In re K.B.*, ¶ 21. In this case, the District Court assessed whether DPHHS had made active efforts to keep the family

together, which is an application of the correct standard under federal law. Thus, we cannot agree that the District Court made an error in law.

¶8 We have construed "active efforts" to mean that timely steps be taken by the agency to prevent the breakup of Indian families. *In re J.S.*, ¶ 25. ICWA also requires a heightened responsibility on the part of the agency seeking to protect the children. *In re J.S.*, ¶ 25. The State cannot simply issue a treatment plan and wait for the parent to complete it. Under ICWA, there is a burden on the State to encourage and provide assistance to the parent to ensure the highest chance of successful completion of the treatment plan. *In re A.N.*, 2005 MT 19, ¶ 23, 325 Mont. 379, 106 P.3d 556. Still, the parent must demonstrate a willingness to comply and to conform his or her lifestyle to the best interests of the child. *In re A.N.*, ¶ 23.

¶9 M.B. argues that DPHHS's efforts on her behalf were inadequate because her mental state in the aftermath of her rape in early 2013 needed to be addressed before she could treat her substance abuse issues. She also posits that the District Court erred in concluding that it was unlikely that M.B. would make significant progress on her treatment plan within a reasonable amount of time. However, the record shows that M.B. had substance abuse problems before 2013 and that she started using controlled substances in her teenage years. Consequently, tying her current substance abuse issues with the trauma she suffered in 2013 confuses the source of her addiction. Further, DPHHS referred M.B. to a licensed professional counselor for therapy weeks after E.O. and N.B. were adjudicated as youths in need of care. This demonstrates DPHHS's timely action in attempting to keep the family together. The counselor began therapy at the end

of January 2014 and DPHHS provided these services to M.B. at its cost before ultimately incorporating it in the April 3, 2014 treatment plan. M.B. attended therapy for 16 sessions and was diagnosed with PTSD. The counsellor noted that M.B. had suffered abuse and violence as a youth and needed more treatment, but the counseling sessions stopped when M.B. moved from Livingston to Billings in July 2014. The counselor recommended continued treatment in Billings, and DPHHS would have paid for it. During this process DPHHS was actively monitoring M.B.'s development and treatment. After moving to Billings, M.B. did not independently seek further therapy. Nevertheless, DPHHS encouraged M.B. to enter chemical dependency programs at the Indian Health Board in Billings. Eventually, after providing financial assistance, rent money, encouragement, and careful monitoring, the DPHHS's efforts to provide assistance were hampered by M.B.'s decision to move to Minneapolis.

¶10 Furthermore, an ICWA expert testified that DPHHS had met its "active efforts" burden in M.B.'s case. DPHHS made a concerted effort to encourage and facilitate M.B.'s need for trauma and addiction treatment. The Department did not simply write a plan and wait for M.B. to follow through. Rather, it provided active monitoring and logistical and financial assistance until M.B. moved to Minneapolis. DPHHS's actions were both timely and affirmative, and they continued over the span of two years. *In re J.S.*, ¶ 25. Confronted with that record, the District Court concluded that DPHHS had met its "active effort" burden as required under ICWA. Upon review we cannot agree that the District Court's findings were clearly erroneous.

¶11    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions.  In the opinion of the Court, this case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶12    Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ LAURIE McKINNON
/S/ PATRICIA COTTER
/S/ JIM RICE
/S/ JAMES JEREMIAH SHEA