ORIGINAL

FILED

09/21/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0134

DA 21-0134

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2021 MT 241N

IN THE MATTER OF:

A.D.,

     A Youth in Need of Care.

FILED

SEP 2 1 2021

Bowen Greenwood
Clerk of Supreme Court
State of Montana

APPEAL FROM:    District Court of the Second Judicial District,
In and For the County of Butte-Silver Bow, Cause No. DN 18-59-KK
Honorable Kurt Krueger, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Shannon Hathaway, Driscoll Hathaway Law Group, Missoula, Montana

    For Appellee:

        Austin Knudsen, Montana Attorney General, Katie F. Schulz, Assistant
Attorney General, Helena, Montana

        Eileen Joyce, Butte-Silver Bow County Attorney, Mark Vucurovich,
Special Deputy County Attorney, Butte, Montana

                Submitted on Briefs:  August 25, 2021

                        Decided:  September 21, 2021

Filed:

                           _____
                                Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 M.D. (Father) appeals from the Findings of Fact, Conclusions of Law and Order Terminating Parental Rights and Granting Permanent Legal Custody, Re: Birth Father, entered by the Second Judicial District Court, Butte-Silver Bow County, on February 24, 2021, terminating his parental rights to A.D. (Child). Father argues the District Court violated his due process rights by failing to provide him with fundamentally fair procedures and the District Court erred in concluding the continuation of the parent-child relationship would likely result in continued abuse and neglect to Child.

¶3 Child is the only biological child of Father with M.W. (Mother).[1] Father has an extensive history with the Department of Public Health and Human Services, Child and Family Services Division (Department), involving other children dating back to 2009. The Department began receiving reports involving domestic violence in front of Child in September 2017. Mother obtained a permanent restraining order against Father in October 2017, following a physical altercation. Despite the restraining order, the Department

_____

[1] Father has other children not at issue in these proceedings.

2

continued to receive reports of physical altercations between Mother and Father in front of or involving Child, including reports that Father had forcibly removed Child from Mother's care on multiple occasions. The Department counseled Mother and Father how to safely exchange Child to avoid future violations of the order of protection.

¶4      The Department ultimately removed Child from both Mother and Father on June 19, 2018, following an incident where Father broke into Mother's home and forcibly removed Child from Mother in the early morning hours. Father was arrested and charged with burglary, partner or family member assault (PFMA), and violation of a protection order. The Department petitioned for Emergency Protective Services, adjudication of Child as a Youth in Need of Care (YINC) and Temporary Legal Custody (TLC) on June 26, 2018. A joint show cause, adjudication, and disposition hearing was held July 18, 2018. Father appeared at the hearing via VisionNet as he was incarcerated at the time of the hearing. He stipulated Child was a YINC and to granting TLC to the Department. At the same hearing, Mother stipulated to granting the Department Temporary Investigative Authority (TIA). After the hearing, the court issued two orders: one granting the Department TLC as to Father and one granting TIA as to Mother.[2] Father did not object.

¶5      The Department petitioned for an extension of TLC in January 2019. In the accompanying affidavit, Child Protection Specialist (CPS) Ciana Dale attested Father went to the Department when he was released from prison in October 2018 but became defensive

---

[2] The court later granted the Department TLC as to Mother on October 10, 2018.

and left when they discussed developing a treatment plan. Dale attested she had not heard from Father since that meeting and did not know his whereabouts. Father declined to provide any information when Dale reached him by telephone and indicated he would not participate in the Department's efforts. Nonetheless, the Department submitted referrals for Father to providers for visitation, anger management, and chemical dependency. Father did not engage with any of the providers. Dale attested the Department provided Father's attorney with a proposed treatment plan on December 6, 2018, but had no communication back regarding the plan. She attested Father was not working with the Department and had made no efforts toward reunification. Before a hearing on the petition to extend TLC, the Department filed a motion to approve Father's treatment plan on March 20, 2019. Dale asserted in the accompanying affidavit the Department had attempted to resolve treatment plan issues with Father but was unable to do so. The hearing set for April 10, 2019, on extending TLC and approving Father's treatment plan was continued as Father sought appointment of new counsel. The hearing was held on May 15, 2019, with new counsel for Father present. Father was not present. The court extended TLC for an additional six months and approved Father's treatment plan. The treatment plan stated Father was to engage in some tasks by January 15, 2018.

¶6      The Department filed a motion for a permanency hearing on August 19, 2019. The permanency plan was reunification with Mother, with a secondary plan of reunification with Father. Dale attested in the accompanying affidavit the Department had attempted to reach out to Father through letters, phone calls, and contact with his attorneys but had been

4

unable to contact him. She asserted if Father continued to avoid the Department and the Department could not alleviate safety concerns, it would seek termination of Father's parental rights.

¶7 The Department petitioned to terminate Father's parental rights on January 23, 2020. After several continuances and appointment of another new counsel for Father in October 2020, the termination hearing was held on February 16, 2021. By the time of the hearing, Child had been in a trial home visit with Mother for several months and the Department indicated it intended to dismiss the dependent neglect case as to Mother. Father was incarcerated at the time of the termination hearing on two separate five-year sentences to the Department of Corrections, with an additional three felony cases still pending, which included an incident of PFMA and violence involving another partner and child.

¶8 Dale was the only witness at the termination hearing. She detailed the Department's efforts to assist Father and testified Father "took absolutely no steps to assist the Department and to assist himself in reunifying with [Child]." On cross-examination, Dale acknowledged the deadlines in the treatment plan had passed before the plan was approved by the court. She also acknowledged that since the appointment of new counsel in October 2020, Father had reached out to the Department about chemical dependency and mental health issues, but Dale had not verified whether he had participated in any programming available at the jail. In closing, Father's counsel argued termination was not appropriate, as Child was placed with Mother with no ongoing safety concerns. The

District Court terminated Father's parental rights to Child under § 41-3-609(1)(f), MCA. The court found Father had a history of domestic violence and physical abuse against the mothers of his children. The court found Father failed all components of his treatment plan and the conduct or condition rendering him unfit, unable, or unwilling to give Child adequate parental care was unlikely to change within a reasonable time because of a complete failure to develop a relationship with Child or work with the Department and his continued criminal activity. The Court found a continuation of the parent-child relationship between Father and Child would likely result in continued abuse and neglect. Father appeals.

¶9 We review a district court's decision to terminate a person's parental rights for an abuse of discretion. *In re A.B.*, 2020 MT 64, ¶ 23, 399 Mont. 219, 460 P.3d 405. "We will not disturb a district court's decision on appeal unless there is a mistake of law or a finding of fact not supported by substantial evidence that would amount to a clear abuse of discretion." *In re H.T.*, 2015 MT 41, ¶ 10, 378 Mont. 206, 343 P.3d 159.

¶10 Father first argues his right to fundamentally fair procedures was violated because the District Court granted TLC as to Father and TIA as to Mother at the show cause hearing in violation of the statutes governing dependent neglect proceedings and the Department did not develop a treatment plan for him within thirty days of the grant of TLC. *See* §§ 41-3-437, -438, -443, MCA. Father did not raise either of these issues before the District Court and has waived the issues on appeal. *In re A.A.*, 2005 MT 119, ¶ 26, 327 Mont. 127, 112 P.3d 993. Father stipulated to TLC and did not object to its repeated extension. The

6

Court will not fault a District Court when the appealing party acquiesced or actively participated in the ruling being challenged on appeal. *In re A.A.*, ¶ 26. Further, any error regarding the delay in obtaining court approval of Father's treatment plan was harmless. *In re A.L.P.*, 2020 MT 87, ¶ 26, 399 Mont. 504, 461 P.3d 136. Much of the delay regarding the treatment plan was caused by Father's refusal to engage with the Department in any way. The record further demonstrates Father did not engage with the Department in any meaningful manner even after his treatment plan was ordered in May 2019. The Department did not file for termination until January 2020 and the hearing on that petition was not held until February 2021. Father failed to address any components of his treatment plan in the over twenty months between the ordering of his treatment plan and the termination hearing. The District Court did not find the treatment plan failed because Father failed to complete tasks within the timeframe stated in the plan, but because he did not complete *any* tasks within the twenty months the plan was approved by the court.

¶11   Next Father argues the District Court erred in concluding Father's continued relationship with Child would result in continued abuse and neglect. Father argues it was unnecessary to terminate his parental rights because Child was placed safely with Mother. Father maintains any remaining safety concerns he poses to Child could be addressed by a parenting plan.

¶12   A court may terminate parental rights when (1) a child has been adjudicated as a YINC; (2) an appropriate treatment plan approved by the court has not been complied with by the parent or has not been successful; and (3) the conduct or condition of the parent

7

rendering him unfit is unlikely to change within a reasonable time. Section 41-3-609(1)(f), MCA. Each factor must be supported by clear and convincing evidence. Section 41-3-609(1), MCA. In determining whether the conduct or condition of the parent is likely to change within a reasonable time, "the court shall enter a finding that continuation of the parent-child legal relationship will likely result in continued abuse or neglect or that the conduct or the condition of the parent[] renders the parent[] unfit, unable, or unwilling to give the child adequate parental care." Section 41-3-609(2), MCA.

¶13 The District Court made sufficient findings and conclusions to support its decision to terminate Father's parental rights under § 41-3-609(1)(f), MCA. Whether a child is returned to the other parent is not determinative under § 41-3-609, MCA. The District Court found Father was unlikely to change, citing Father's failure to develop a relationship with A.D. over the two years of these proceedings, his refusal to work with the Department, and his continued criminal activity. The court found Father has a history of domestic violence and physical abuse against the mothers of his children. Father's behaviors had not changed despite repeated Department interventions over more than a decade. Here, Father's prior behaviors actively interfered with Mother's ability to safely parent and the Department was warranted in seeking termination of Father's parental rights, rather than leaving it to the parents to work out in a parenting plan action. *See In re D.D.*, 2021 MT 66, ¶ 19, 403 Mont. 376, 482 P.3d 1176 ("[T]he evidence suggests Father has negatively impacted Mother's parenting abilities and termination of Father's parenting rights

8

improves Mother's potential to remain a safe, stable parent for Child which is at the heart of Child's permanency.").

¶14   The District Court did not err in concluding Father's continued relationship with Child would likely result in continued abuse and neglect. The District Court did not abuse its discretion in terminating Father's parental rights.

¶15   We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶16   Affirmed.

_____
                                    Justice

We concur:

_____
Chief Justice

_____

_____

_____
                    Justices

9