ORIGINAL

FILED

10/05/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0101

DA 21-0101

## IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 260N

IN THE MATTER OF:

S.K.,

      A Youth in Need of Care.

FILED

OCT 0 5 2021

Bowen Greenwood
Clerk of Supreme Court
State of Montana

APPEAL FROM:    District Court of the Second Judicial District,
In and For the County of Butte-Silver Bow, Cause No. DN 18-1
Honorable Robert J. Whelan, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

         Michael P. Sinks, Attorney at Law, Bozeman, Montana

      For Appellee:

         Austin Knudsen, Montana Attorney General, Katie F. Schulz, Assistant
Attorney General, Helena, Montana

         Eileen Joyce, Butte-Silver Bow County Attorney, Mark Vucurovich,
Special Deputy County Attorney, Butte, Montana

Submitted on Briefs: September 15, 2021

Decided: October 5, 2021

Filed:



                  Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 J.K. (Father) appeals from the Findings of Fact, Conclusions of Law and Order Terminating Parental Rights and Granting Permanent Legal Custody, Re: Birth Father, entered by the Second Judicial District Court, Butte-Silver Bow County, on February 1, 2021, terminating his parental rights to S.K. (Child). We affirm.

¶3 At the time of Child's birth, the Department of Public Health and Human Services, Child and Family Services Division (Department) filed a petition for emergency protective services (EPS), adjudication of Child as a youth in need of care (YINC), and seeking temporary legal custody (TLC) based on Mother being under the influence of methamphetamine when she presented to the hospital to deliver Child. Although at that time the Department possessed information that Father was Child's birth father, the Department did not pursue formal determination of such through paternity testing. Instead, the petition was amended to one for temporary investigative authority (TIA) and Mother worked with the Department, attended the Florence Crittenton mother-child facility with Child, and the Department dismissed the case.

2

¶4 Nearly eighteen months later, on August 2, 2019, the Department filed another TIA petition asserting concerns regarding Mother's drug use as well as alleged domestic violence between Father and Mother's then-boyfriend. Approximately two weeks later, on August 14, 2019, the Department filed a petition seeking EPS, adjudication of Child as a YINC, and TLC due to Mother's ongoing drug use. For a considerable time following this petition, the Department did not seek to formally establish Father's paternity.[1] The Department sought extension of TLC on March 17, 2020, and approval of a treatment plan for Father on June 11, 2020.[2] The Department filed its petition to terminate Father's parental rights on June 26, 2020. In the petition and supporting affidavit, the Department sought to terminate Father's parental rights pursuant to § 41-3-609(4)(c), MCA.[3] Following hearing on December 28, 2020, the District Court terminated Father's parental rights pursuant to § 41-3-609(4)(c), MCA—finding no treatment plan necessary due to

---

[1] The Department did not request paternity testing until November 21, 2019, and paternity was not formally established until March 17, 2020—7 months after the filing of the petition.

[2] The Department sought to vacate the treatment plan hearing a few weeks later, indicating to the court it intended instead to seek termination of Father's parental rights such that a treatment plan was not necessary.

[3] Specifically, the Department asserted:

> Father's parental rights can be terminated without a treatment plan because Father is, or will be, incarcerated for more than 1 year and reunification of the child with Father is not in the best interests of the child because of the child's circumstances, including the child's placement options, age, and developmental, cognitive, and psychological needs, which include the following: child has been in current placement for the last 10 months, she does not have a significant relationship with her father as he has been incarcerated in some fashion for all but close to 2 months of her life over a year ago.

3

Father's long-term incarceration. The court further found reunification with Father was not in the best interest of Child as "she does not have a significant relationship with [Father] as he has been incarcerated in some fashion for all but close to 2 months of her life over a year ago."

¶5   Father appeals the termination of his parental rights asserting ineffective assistance of counsel for failing to advocate to establish paternity sooner and failing to zealously advocate for a treatment plan earlier in the case. Father asserts he was prejudiced by this loss of time.

¶6   We review a district court's decision to terminate a person's parental rights for an abuse of discretion. *In re A.B.*, 2020 MT 64, ¶ 23, 399 Mont. 219, 460 P.3d 405. "We will not disturb a district court's decision on appeal unless there is a mistake of law or a finding of fact not supported by substantial evidence that would amount to a clear abuse of discretion." *In re H.T.*, 2015 MT 41, ¶ 10, 378 Mont. 206, 343 P.3d 159. "[P]arents have a due process right to effective assistance of counsel in termination proceedings." *In re E.Y.R.*, 2019 MT 189, ¶ 22, 396 Mont. 515, 446 P.3d 1117 (quoting *In re A.S.*, 2004 MT 62, ¶ 20, 320 Mont. 268, 87 P.3d 408). Whether assistance was effective requires review of counsel's training, experience, and advocacy. *In re A.S.*, ¶ 26. IAC requires reversal only if the parent suffered prejudice. *In re E.Y.R.*, ¶ 22 (citing *In re B.M.*, 2010 MT 114, ¶ 22, 356 Mont. 327, 233 P.3d 338).

¶7   From our review of the record, even if we accept Father's assertion that his counsel was ineffective in failing to seek establishment of paternity as well as a treatment plan

4

earlier, he has failed to establish he was prejudiced by counsel's ineffectiveness. There is nothing in the record to suggest that had paternity been formally established at the outset of the case, a different result would have occurred. Nor is there anything in the record to suggest that had a treatment plan been approved for Father in a timely manner, a different result would have occurred. Father was identified in the initial petition as the only putative father and there is no indication the District Court did not recognize him as Child's birth father throughout the entire proceeding. The District Court did not terminate Father's parental rights for his failure to complete treatment plan tasks in a timely manner. Instead, the District Court terminated Father's parental rights based on his long-term incarceration which commenced early in the case and was anticipated to continue for at least another year beyond the date of the termination hearing.[4] The District Court reasonably found this long-term incarceration prevented Father from developing a relationship with Child, Child was in a stable environment and was well-adjusted and bonded with her placement and home environment, and in need of permanency.

¶8 The District Court made sufficient findings supported by the record to support its decision to terminate Father's parental rights under § 41-3-609(4)(c), MCA. Regardless of whether paternity had been formally established at the outset or whether counsel should have advocated more zealously to establish a treatment plan for Father, the fact remains he

---

[4] Indeed, Father himself acknowledges he was incarcerated on the day Child was born and remained incarcerated in some location or another during the pendency of this case, except for a 53-day period from May 8 to July 2, 2019, when he was released on probation. Father also acknowledges he is not scheduled to be released from Montana State Prison until August 22, 2022.

was incarcerated for more than one year and the District Court made findings supported by the record that reunification was not in Child's best interests. Father has failed to establish he was prejudiced by anything other than his own long-term incarceration.

¶9 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶10 Affirmed.

_____
Justice

We concur:

_____
_____
_____
_____
Justices

6