# FILED

05/09/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 16-0575

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2017 MT 108

IN THE MATTER OF:

C.B.D. and P.M.P.,

       Youths in Need of Care.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DN 14-142
Honorable Mary Jane Knisely, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Meri Althauser, Montana Legal Justice, PLLC, Missoula, Montana

      For Appellee:

      Timothy C. Fox, Montana Attorney General, Katie F. Schulz, Assistant
Attorney General, Helena, Montana

      Scott D. Twito, Yellowstone County Attorney, Billings, Montana

          Submitted on Briefs:  March 15, 2017

          Decided:  May 9, 2017

Filed:

_____
              Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1    Birth mother, A.P. (Mother) appeals orders of the Thirteenth Judicial District, Yellowstone County, terminating her parental rights with respect to C.B.D. and P.M.P. We restate the issue on appeal as follows:

*Whether Mother has standing to challenge the placement of P.M.P. after Mother's parental rights were terminated.*

¶2    We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3    In December 2012, the Department of Health and Human Services (the Department) received a report that P.M.P., an Indian Child for purposes of the Indian Child Welfare Act (ICWA), had tested positive for marijuana and Hydrocodone at birth. The Department took no action against Mother at that time. In August 2014, the Department was notified that Mother was using methamphetamine intravenously, leaving needles within reach of the children, and that 20-month-old P.M.P. was playing with a Taser. The Department attempted to contact Mother at this time, but was ultimately unsuccessful. On September 26, 2014, the Billings Police Department responded to a call from the children's father that Mother told him she had strangled P.M.P. and killed her. When the police located Mother, they discovered that P.M.P. was, in fact, alive and had been in the care of Mother's cousin for several weeks. The children's father suggested that Mother had hallucinated the events as a result of her methamphetamine use. P.M.P. was immediately placed into emergency protective care with maternal relatives, in compliance with ICWA.

¶4 From September 2014 until April 2016, the Department attempted, unsuccessfully, to work with Mother to overcome her substance abuse issues in order to regain custody of her children. On April 4, 2016, the Department filed a petition to terminate Mother's parental rights. On June 21, 2016, the District Court held a hearing on the petition. The Department's ICWA expert testified that for the past two years, P.M.P. had been in the home of R.W. and J.A., neighbors of Mother's relatives. The ICWA expert also testified that this placement was not in compliance with ICWA. On August 30, 2016, the District Court issued its Findings of Fact, Conclusions of Law, and Order Terminating Parental Rights. Mother timely appealed this order only as it pertains to P.M.P.'s placement, not the termination of her parental rights.

## STANDARD OF REVIEW

¶5 Questions of justiciability, such as standing, are questions of law which we review de novo. *Heffernan v. Missoula City Council*, 2011 MT 91, ¶ 28, 360 Mont. 207, 255 P.3d 80. We determine whether a party has standing "as of the time the action is brought." *Heffernan*, ¶ 30.

## DISCUSSION

¶6 *Whether Mother has standing to challenge the placement of P.M.P. after Mother's parental rights were terminated.*

¶7 A threshold question in every case is whether a party has standing to bring an action. *Heffernan*, ¶ 29. Parties must show, at a minimum, a "past, present, or threatened" injury to a property or civil right, and must show that the "injury would be alleviated by

3

successfully maintaining the action." *Schoof v. Nesbit*, 2014 MT 6, ¶ 15, 373 Mont. 226, 316 P.3d 831.

¶8 Mother appeals the District Court's order terminating her parental rights. However, rather than challenging the termination, Mother only challenges the placement of P.M.P. Mother argues the Department violated 25 U.S.C. § 1912(a) and her due process rights when P.M.P. was moved into the home of R.W. and J.A. without affording her ten days of notice and an opportunity to participate, as required by ICWA. Mother cites 25 U.S.C. § 1914 and *In re H.T.*, 2015 MT 41, 378 Mont. 206, 343 P.3d 159, for the proposition that she has standing to challenge certain violations of ICWA, including § 1912(a), for the first time on an appeal to this Court, despite never objecting at the District Court. As this is the first opportunity any court has had to address her claims with respect to placement of P.M.P., we will determine her standing as of the time she brought this appeal.

¶9 Mother's appeal comes after the District Court terminated her parental rights, effectively stripping her of "all legal rights, powers, immunities, duties, and obligations with respect to [the child]." Section 41-3-611(1), MCA. This includes the right to participate in the placement of P.M.P. Section 41-3-611(3), MCA. Had Mother appealed the termination of her parental rights, as well as the placement of P.M.P., she would have retained her standing to have us address both issues. However, by appealing only P.M.P.'s placement, while foregoing the appeal of the termination of her parental rights, Mother effectively divested herself of any standing to participate in the placement of P.M.P., since she no longer has any legal status relative to P.M.P. Appealing the order as it pertains to P.M.P.'s placement does not stay the termination of Mother's parental rights. Section

4

41-3-113(2), MCA. Nor has Mother sought a stay from this Court. This creates a situation in which Mother is alleging an injury to a civil right—the right to parent—that she no longer has, and is making no effort to regain. Therefore, Mother is without standing to bring her action. Even if Mother had a legitimate injury, she requests that we order a placement hearing for P.M.P. which she would be unable to attend or otherwise participate in. Thus, Mother's injuries cannot be alleviated by successfully maintaining her action.

¶10    In her concurring opinion, Justice McKinnon correctly points out that § 1914 does not ordinarily require an Indian parent to challenge the termination of his or her parental rights and a foster care placement of an Indian child simultaneously. Special Concurrence, ¶ 15. Section 1914 provides Indian parents with the ability to challenge foster care placements that violate § 1912 at any point during the proceedings up until the point that parental rights are terminated. However, the unique procedural posture of this case—Mother's decision to accept termination of her parental rights by not appealing the termination—precludes us from considering on appeal the merits of any potential issues she may have had with the placement process. A threshold requirement of every case is that a party have standing to bring the action. A party has no standing when there is no personal stake in the outcome of the controversy. *Matter of Paternity of Vainio*, 284 Mont. 229, 235, 943 P.2d 1282, 1286 (1997). Mother's standing to challenge the placement process derived from her legal status as P.M.P.'s mother. As this matter presently stands before us, she no longer holds that same legal status, nor is she seeking a reversal of the termination of her parental rights on appeal. She therefore cannot cross the standing threshold.

5

## CONCLUSION

¶11 Mother has not shown an injury to her civil or property rights, nor can she show that her injury would be alleviated by successfully maintaining her action. Mother therefore lacks standing in this matter. We affirm the District Court's order.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ MIKE McGRATH
/S/ DIRK M. SANDEFUR
/S/ JIM RICE

Justice McKinnon, specially concurring.

¶12 I do not agree with the Court's conclusion that an Indian mother has no standing to challenge placement of her child with a non-Indian family, when she contests only the placement and not the termination of her parental rights. The placement requirements and preferences of ICWA represent a significant commitment to the preservation and perpetuation of Indian heritage, which is a vastly different consideration and inquiry than whether a particular parent's rights should be terminated. In my opinion, 25 U.S.C. § 1914 of ICWA contemplates a challenge to foster care placement *or* termination. Nonetheless, I would conclude that the record does not support DPHHS ever intended or chose to alter the children's initial kinship placement made pursuant to ICWA preferences. Accordingly, the notice requirements of ICWA set forth in 25 U.S.C. § 1912 are not applicable. What remains is Mother's argument that she was denied due process because she was not given

6

an opportunity to object to P.M.P.'s placement.[1]  Here, I would conclude based on the record of these proceedings that Mother had ample opportunity to raise this issue in the District Court, but, having failed to do so, has waived the issue for our consideration.

¶13    ICWA is a federal mandate requiring states to take active efforts to preserve and protect the cultural interests of Indian tribes and Indian children.  In applying ICWA, this Court has stated that "we are cognizant of our responsibility to promote and protect the unique cultures of our state for all future generations of Montanans." *In re M.E.M.*, 195 Mont. 329, 333, 635 P.2d 1313, 1316 (1981).  To ensure that tribal culture is preserved, § 1914 provides that any parent or Indian custodian of an Indian child, as well as the Indian child's tribe itself, may petition to invalidate a "foster care placement" or "termination of parental rights under State law."  Section 1914 provides:

> Any Indian child who is the subject of any action for foster care placement or termination of parental rights under State law, any parent or Indian custodian from whose custody such child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated the provision of sections 101, 102, and 103 of this Act [25 U.S.C. §§ 1911, 1912, 1913].

¶14    Section 1903(1)(i) of ICWA defines "foster care placement" as "any action removing an Indian child from its parent . . . for temporary placement in a foster home or institution or the home of a guardian or conservator where the parent . . . cannot have the child returned upon demand, but where parental rights have not been terminated."  A "parent" is defined in ICWA as "any biological parent . . ." 25 U.S.C. § 1903(9).  Here,

---

[1] C.B.D. was placed with his maternal grandmother to accommodate his ability to communicate using the Crow language.  It is my understanding that Mother's primary objection is to the non-native, non-relative placement of P.M.P.

Mother remains the biological parent even though her rights have been terminated. Given her contention on appeal that she was not provided notice of a change in placement until the termination hearing, in conjunction with right to petition a court of competent jurisdiction to review the foster care placement, I would not conclude Mother lacks standing to contest the placement of her children with a non-native family, as the Court does.[2]

¶15   While the procedural posture of this case is challenging, the language of §§ 25 U.S.C. 1903(1)(i), 1903(9), and 1914, do not require a parent to challenge the placement of her Indian child and the termination of her child simultaneously. Indeed, it seems inconsistent with the purpose of ICWA to conclude that a biological Indian parent may not challenge the placement of her Indian child with a non-native, non-relative family, in the absence of clear language to the contrary. The Indian parent may recognize that she is not in a position to parent, but nonetheless want the child to remain connected with his or her Indian culture and family. It would appear our decision that the Indian parent must appeal both the termination of her parental rights and placement decision of her child may, in part, be a failure to recognize that Indian heritage and culture often embraces extended family units and active participation of the extended family in child rearing efforts. Foreclosing a challenge to placement by a biological Indian parent based on standing,

---

[2] As Mother's parental rights have been terminated, the children are no longer considered in foster care placement for purposes of ICWA, which is contingent upon "parental rights [not having] been terminated." 25 U.S.C. § 1903 (1)(i). Accordingly, Mother no longer may petition for review of placement decisions under ICWA. Opinion, ¶ 6. Also, pursuant to § 41-3-611(3), MCA, Mother has no right to participate in placement decisions of P.M.P. Opinion, ¶ 6.

absent clear language in ICWA stating as much, seems contrary to the underlying purpose of ICWA–protection of Indian cultural heritage, including the extended family. Perhaps our definition of standing reflects more our own perception of a family unit, rather than how the culture of the particular Indian tribe or Indian parent would perceive and define it. I would, therefore, not decide these proceedings on the basis that the biological Indian parent has no standing to contest a foster care placement decision.

¶16 ICWA, nonetheless, does not offer Mother any relief. Pursuant to § 1914 there are only three proceedings from which a parent or Tribe may appeal for invalidation of a state court order: § 1911 (jurisdiction and transfer), § 1912 (notice, right to counsel, active efforts, qualified expert testimony re: likelihood of serious or emotional damage to child in parent's care), and § 1913 (termination of parental rights). Mother challenges only that she was not provided notice pursuant to § 1912. As we held in *H.T.*, ¶ 25, Mother may raise on appeal for the first time that the notice requirements of ICWA were not satisfied.

¶17 Mother argues that a change in placement of P.M.P. to a non-native, non-relative family should be considered a "foster care placement," thus invoking the notice provisions of 25 U.S.C. § 1912(e) requiring that the party seeking the foster care placement to provide notice to the parent of its intentions to change placement and advise the parents of the right to intervene. Here, however, the unrebutted testimony of the DPHHS caseworker at the termination hearing was that the she did not change P.M.P.'s placement and did not know that P.M.P. was staying with a non-compliant family. In fact, DPHHS had not changed the placement; rather, Mother's own family members changed the placement without DPHHS approval. Accordingly, I would resolve the question of notice in favor of the State, as

DPHHS did not seek a change in placement and the change in placement was accomplished by the Mother's family, without knowledge by DPHHS.

¶18     Given that there was no requirement for notice pursuant to ICWA, I turn to Mother's remaining claim that she was denied due process.  In resolving this issue, Mother will be deemed to have waived her objection if not raised first in the District Court.  *H.T.*, ¶ 14; *In re D.K.D.*, 2011 MT 74, ¶ 16, 360 Mont. 76, 250 P.3d 856.  Here, the testimony at the termination hearing from the ICWA expert was that P.M.P. had been staying in a non-native, non-relative home for the previous two years through the arrangements of Mother's family.  During this time, Mother had visited P.M.P. on several occasions.  Mother, who was personally served with the petition to terminate her parental rights, did not appear for the hearing.  Significantly, Mother did not appear for any hearing during the entire proceedings, except for the initial show cause hearing held in November 2014.  Mother was represented by counsel throughout the proceedings who appeared at every hearing on Mother's behalf, including the termination hearing, and did not object to the placement of P.M.P. even following the ICWA expert's testimony.  The record also demonstrates that Mother participated in several Family Group Decision Making Meetings where other family members participated, including Mother's aunt, R.H., with whom DPHHS understood P.M.P. had been placed.

¶19     Based upon this record, I would conclude that Mother has waived her objection to placement, having failed to raise it in the District Court.  Mother is not entitled to have her claim concerning violation of the ICWA notice provisions considered because DPHHS did not seek a change in placement and, in fact, did not know that P.M.P. had been placed other

than where previously placed by DPHHS. The caseworker's testimony as to this point is unrefuted. Finally, I would not decide this case on the basis that Mother lacked standing as I think to do so is contrary to language of 25 U.S.C. § 1912, providing for review upon petition of an Indian parent of both foster care placements or terminations, and to the purpose underlying ICWA.

/S/ LAURIE McKINNON

11