Justice Beth Baker delivered the Opinion of the Court.
***274 ¶1 Appellant M.D. (Father) challenges the Thirteenth Judicial District Court's decision to terminate his parental rights to his minor child, A.L.D. Father contends that the State of Montana's Department of Public Health and Human Services (Department) did not provide the active efforts required under 25 U.S.C. § 1912(d) to prevent the breakup of an Indian family; that A.L.D. was placed in a foster home in violation of the placement preferences set forth in 25 U.S.C. § 1915 ; and that Father's attorney provided ineffective assistance of counsel. We affirm.
PROCEDURAL AND FACTUAL BACKGROUND
¶2 It is undisputed that A.L.D. is an Indian child for purposes of the Indian Child Welfare Act (ICWA), 25 U.S.C. §§ 1901 through 1923. Both A.L.D. and her mother tested positive for methamphetamine, amphetamine, and marijuana at A.L.D.'s birth in July 2015. At that time, Father was requesting a DNA test to establish his paternity. The Department initiated child custody proceedings based on physical neglect because of the birth parents' inability to meet A.L.D.'s basic needs and provide her a safe environment.
¶3 Two years later, the District Court terminated the parental rights of both parents. Father, who had been in and out of jail throughout the case, did not attend the termination hearing, although his attorney was present. The court found that the Department had made active efforts to prevent the breakup of this Indian family and that it had *345 presented evidence establishing beyond a reasonable doubt that Father's treatment plan had not been successful, his conduct or condition is unlikely to change within a reasonable time, continuation of the parent-child relationship between A.L.D. and Father will likely result in continued abuse and neglect, and the best interests of A.L.D. will be served by termination.
STANDARDS OF REVIEW
¶4 In a case governed by ICWA, we will uphold the district court's termination of parental rights if a reasonable fact-finder could conclude beyond a reasonable doubt that continued custody by the parent is likely to result in serious emotional or physical damage to the child, ***275 and we review the court's application of the law to the facts of the case for correctness. In re K.B. , 2013 MT 133, ¶ 18, 370 Mont. 254, 301 P.3d 836. We exercise plenary review to determine whether a parent was denied effective assistance of counsel in a termination proceeding. In re A.S., 2004 MT 62, ¶ 9, 320 Mont. 268, 87 P.3d 408.
DISCUSSION
¶5 1. Did the Department provide the active efforts required under 25 U.S.C. § 1912(d) to prevent the breakup of an Indian family?
¶6 ICWA requires proof beyond a reasonable doubt that a state seeking termination of parental rights to an Indian child has made "active efforts" to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that those efforts were unsuccessful. 25 U.S.C. § 1912(d). The Department's caseworker testified at the termination hearing that the Department had offered to make appointments for chemical dependency testing for Father, but that he did not agree to get tested. The Department set up visits between A.L.D. and Father, who attended only three visits over a two-year period. The Department's caseworker further testified that Father had been incarcerated off-and-on during the time the case was open and that he failed repeatedly to keep the Department apprised of how to contact him. The case worker testified that, when she learned the father was detained at the Yellowstone County Detention Facility, she went to visit him there.
¶7 Father criticizes the Department for not inquiring regarding programs for which he might be eligible at the Yellowstone County Detention Facility. But we will not fault the Department in its active efforts if its efforts are curtailed by the parent's own criminal behavior. See In re M.S ., 2014 MT 265, ¶ 25, 376 Mont. 394, 336 P.3d 930. Father failed to engage in his treatment plan even during the times he was not incarcerated.
¶8 The Department presented additional evidence showing its active efforts to prevent the breakup of the family. Since "active efforts" are designed to prevent the breakup of the Indian family, it is appropriate for a court to consider efforts provided to the other parent of the child when evaluating the total "active efforts" and whether they were unsuccessful. In re D.S.B. , 2013 MT 112, ¶ 17, 370 Mont. 37, 300 P.3d 702. The Department case worker testified at the termination hearing that the Department had offered the mother parenting classes and bus passes to attend visitations with A.L.D. and to get drug testing and treatment; had attempted to enroll the mother in the Florence Crittenton Reach Program; and had maintained regular contact with ***276 A.L.D.'s known extended family and tribe. The Department also had facilitated visits between A.L.D. and her extended family.
¶9 After reviewing the record, we conclude that Father has not shown error in the District Court's holding that the Department provided the active efforts required under 25 U.S.C. § 1912(d).
¶10 2. Did A.L.D.'s foster home placement violate the placement preferences set forth in 25 U.S.C. § 1915 ?
¶11 ICWA requires that, "[i]n any foster care or preadoptive placement, a preference shall be given, in the absence of good cause to the contrary, to a placement with" a member of the child's extended family; a foster home licensed, approved, or specified *346 by the child's tribe; an Indian foster home licensed or approved by an authorized non-Indian licensing agency; or an institution for children approved by an Indian tribe or operated by an Indian organization. 25 U.S.C. § 1915(b). Father argues the Department failed to observe these placement preferences.
¶12 The affidavit in support of the Department's original petition for temporary legal custody states that Father initially told the Department that his mother would be coming to Montana from her home in Utah to take him and A.L.D. home. There is no evidence that Father ever contacted the Department further regarding placement with his mother. At the termination hearing, the Department case worker testified that Father had told her he had no relatives who would be appropriate for foster placement of A.L.D. The case worker also testified that she had helped A.L.D.'s mother fill out paperwork to enroll A.L.D. with her tribe and had searched for family members and possible placements through the tribe. The case worker testified that all efforts to place A.L.D. through her tribe or otherwise with an ICWA-preferenced home had failed. The ICWA expert testified that the tribe had no placement for A.L.D. and that, although A.L.D. was recognized as an "associate member" by the tribe, "associate members" are not federally-recognized and, absent federal funding for "associate members," the tribe's attorney does not represent them.
¶13 The father urges us to adopt and apply the 2015 ICWA Guidelines and 2016 ICWA Regulations. The 2015 Guidelines, which were effective on February 25, 2015,
clarify the minimum Federal standards, and best practices, governing implementation of [ICWA] to insure that ICWA is applied in all States consistent with the Act's express language, Congress' intent in enacting the statute, and the canon of construction that statutes enacted for the benefit of Indians are to be liberally construed to their benefit.
***277 80 Fed. Reg. 10146, 10150 (Feb. 25, 2015). The 2016 Regulations have essentially the same purpose. See 25 C.F.R. § 23.101 (2018). The Regulations do not affect a proceeding under State law for foster-care placement, termination of parental rights, preadoptive placement, or adoptive placement that was initiated prior to December 12, 2016, but they do apply to any subsequent proceeding in the same matter or subsequent proceedings affecting the custody or placement of the same child. 25 C.F.R. § 23.143 (2018).
¶14 Because the Guidelines and Regulations automatically apply, there is no need for us to adopt them. We have recognized that the ICWA Guidelines are persuasive and we apply them to ICWA cases. In re C.H ., 2000 MT 64, ¶ 12, 299 Mont. 62, 997 P.2d 776.
¶15 Father acknowledges that the ICWA placement preferences have not changed, but he argues that the Department did not meet its burden under the Guidelines and Regulations of proving it conducted a diligent search to identify placement options that satisfied ICWA's placement preferences, including notification to the child's extended family. He also argues that the District Court's finding of good cause to deviate from the placement preferences is conclusory. The Department responds that the record establishes active efforts; it suggests that if this Court agrees, it need not address the placement order because Father's arguments are mooted by the termination of his rights.[1] Alternatively, the Department argues that Father has not demonstrated reversible error.
¶16 The District Court concluded that, "[d]espite active efforts to do so, neither the Department nor the [tribe] have been able to locate appropriate family members for placement." Based on our review of the record, we conclude that this finding is not clearly erroneous. We observe further that A.L.D. was not in a permanent placement at the time Father's parental rights were terminated, that the Department indicated it would continue to seek a permanent ICWA-preference placement for her, and that the placement *347 preferences set forth at 25 U.S.C. § 1915, as well as the applicable Guidelines and Regulations, continue to apply to future proceedings to determine A.L.D.'s permanent placement.
¶17 We conclude that Father has not established that A.L.D. was placed in a foster home in violation of the placement preferences set ***278 forth in 25 U.S.C. § 1915.
¶18 3. Did Father's attorney provide ineffective assistance of counsel?
¶19 Finally, Father argues that his trial counsel was ineffective for failing to question the ICWA expert regarding active efforts and for failing to object at the November 7, 2016 permanency plan hearing to A.L.D.'s placement. We evaluate the effectiveness of counsel in dependent-neglect matters by looking to two main factors: counsel's experience in this type of case and the quality of counsel's advocacy during the proceeding. We then analyze whether the parent suffered prejudice as a result of any ineffectiveness of counsel. In re A.S. , ¶¶ 26, 31. Father does not challenge his trial counsel's training and experience in dependent-neglect matters.
¶20 At the November 2016 permanency plan hearing, the court stated its understanding that the Department was preparing a petition to terminate the parents' rights to A.L.D. Father's attorney did not attend that hearing and advised the court through other counsel that she had had no contact with Father and did not object to the change in the permanency plan. As the State points out, a permanency plan generally relates to broad goals such as reunification or termination and does not include a decision on a specific out-of-home placement. See § 41-3-445, MCA. More, the court previously had advised counsel that it would leave the record open and would grant a later hearing if they were unable to attend a hearing. Father's arguments focus on placement rather than on the goals of A.L.D.'s permanency plan; he has not established prejudice as a result of his attorney's failure to object to the change in the permanency plan at that hearing.
¶21 Father also argues on appeal that, had his counsel effectively cross-examined the ICWA expert at the termination hearing, it "likely would have" resulted in testimony that the Department had not provided active efforts for him. Father has offered no support for this argument. The statutory requirement is that the State "shall satisfy the court that active efforts have been made." 25 U.S.C. § 1912(d). The ICWA expert did not testify at the termination hearing on the subject of "active efforts." At that hearing, however, the Department's attorney questioned the Department's case worker on the subject of "active efforts." The case worker testified that, despite Father's failures to let the Department know how to contact him, she visited Father in jail, set up visitation times for him and A.L.D. when he was not in jail, and made referrals for chemical and drug testing for him. The case worker also testified to the Department's additional efforts in the case to prevent the breakup of the family. Father's speculation that the ICWA expert would have contradicted the caseworker's testimony does not ***279 establish ineffective assistance of counsel.
CONCLUSION
¶22 The District Court's order terminating Father's parental rights to A.L.D. is affirmed. We decline to disturb the court's placement ruling.
We Concur:
MIKE McGRATH, C.J.
JAMES JEREMIAH SHEA, J.
DIRK M. SANDEFUR, J.
INGRID GUSTAFSON, J.

Because Father appeals the termination of his parental rights and challenges the foster placement of his child, we conclude that his placement arguments are not moot. See In re C.B.D ., 2017 MT 108, 387 Mont. 347, 394 P.3d 202.