Ingrid Gustafson, J., delivered the Opinion of the Court.
***23 ¶ 1 Appellant Dennis Cromwell, the natural father of A.J.C. (Father), appeals the July 20, 2016 Findings, Conclusions and Parenting Plan ordered by the Twentieth Judicial District Court, Sanders County. In a separate but related matter, Father has also appealed the District Court's September 26, 2017 Order Denying Department's Motion to Amend the Permanency Plan and Order of Dismissal.[1]
¶ 2 We restate the issue on appeal as follows:
Did the District Court err by allowing a child's grandmother to ***24 pursue a parental interest under Title 40 while a dependent neglect case was pending under Title 41?
FACTUAL AND PROCEDURAL BACKGROUND
¶ 3 On September 22, 2014, the Department of Health and Human Services, Child and Family Services Division (Department) filed a Petition for Emergency Protective *69 Services (EPS) and Temporary Investigative Authority (TIA) in a dependent neglect (DN) matter, designated as DN 14-06 in the District Court. At the time, A.J.C. was eleven years old and was in the legal custody of his mother (Mother), who frequently left him in the care of his grandmother, Appellee Laura Schaefer (Grandmother). Up to that time, Father, who resided in Oregon, had not participated in parenting A.J.C. to any significant degree, nor had he provided consistent and substantial financial support.
¶ 4 After the Department became formally involved with Mother, Father acted to gain custody of A.J.C. On October 14, 2014, at the Department's direction, Father, naming Mother as Respondent, petitioned the District Court for a parenting plan designating him as A.J.C.'s primary residential parent. This petition, DR 14-71, is the cause underlying this appeal.
¶ 5 On November 3, 2014, the District Court granted EPS and TIA in DN 14-06. On November 17, 2014, the District Court entered default against Mother in DR 14-71 because she had failed to appear. On February 20, 2015, Mother appeared in DR 14-71 via counsel and moved to set aside default. Ultimately, Father and Mother stipulated to an interim parenting plan which had A.J.C. residing with Grandmother during the school year and visiting Father for six weeks during the summer of 2015. The District Court set aside Mother's default and approved the stipulated parenting plan on March 24, 2015, subject to any occurrences in DN 14-06.
¶ 6 On August 13, 2015, Father moved to amend the interim parenting plan, alleging that Mother had not complied with the treatment plan approved by the District Court in DN 14-06. Father asserted that he had agreed to the parenting plan because Mother was in a residential chemical dependency treatment program and he believed placement with Grandmother was appropriate at the time. Father alleged that in the intervening months, Mother had left the residential program and events had occurred which caused him to conclude Grandmother was not an appropriate placement for A.J.C., including Mother being arrested at Grandmother's home, Grandmother allowing a convicted felon to stay at the home while A.J.C. was present, ***25 and A.J.C. arriving for his summer visit with Father lacking appropriate clothing and in need of eyeglasses and dental care. Father also alleged that A.J.C. had done well in Oregon and had made friends. Father proposed that A.J.C. reside with him during the school year and visit Mother at Grandmother's home for six weeks each summer.
¶ 7 On September 2, 2015, Grandmother filed a Petition to Establish a Parental Interest as a separate action, which the District Court designated DR 15-37. Grandmother alleged that Mother was not complying with her treatment plan and that Father had abandoned A.J.C. Grandmother argued that she met the criteria for a third-party interest in A.J.C. under § 40-4-228, MCA. On January 4, 2016, the District Court consolidated DR 15-37 into DR 14-71.
¶ 8 On April 12, 2016, the District Court held a hearing regarding Grandmother's petition to establish a parental interest and the proposed parenting plans Father and Grandmother had filed. The hearing encompassed not only the matters pending in this consolidated case, but also included hearing on the Department's pending Motion for Approval of Permanency Plan in DN 14-06.
¶ 9 On April 18, 2016, Father filed a Motion to Adopt Parenting Plan, and Incorporated Brief in Support, in which he asked the District Court to place A.J.C. in his custody during the school year while allowing continued summer visitation with Grandmother. Father argued that Grandmother was not legally entitled to a parental interest or placement of A.J.C. Father further argued that such placement would not be in A.J.C.'s best interests, as he alleged A.J.C. had been exposed to Mother's drug use, domestic violence, other illegal activity, and association with felons while in Grandmother's care, and alleged that Grandmother had demonstrated an inability to keep Mother away from A.J.C. Grandmother objected to Father's proposed parenting plan.
¶ 10 On July 18, 2016, prior to the District Court issuing rulings on the issues pending at the April hearing, Father filed a motion for an emergency status hearing in *70 DN 14-06. Father indicated the Department had advised him that it intended to place A.J.C. with him for a trial home placement, and Father asked the District Court to hold a status hearing prior to issuing its rulings on the issues argued at the April hearing.
¶ 11 However, prior to responding to Father's motion for emergency status hearing, on July 20, 2016, the District Court issued findings of fact, conclusions of law, and a parenting plan in this case. It awarded Grandmother primary residential custody of A.J.C. and provided Father six weeks of parenting time during the summer. Father appeals ***26 from this determination, arguing that the District Court should not have entertained Grandmother's petition for a parental interest and proposed parenting plan because she did not have standing to pursue a parental interest action under Title 40 while a DN action under Title 41 was pending.
STANDARD OF REVIEW
¶ 12 The same standard of review applies to both termination of parental rights and custodial determinations. In both instances, the District Court's decision is afforded all reasonable presumptions as to the correctness of the determination and therefore such decision will not be disturbed on appeal unless there is a mistake of law or a finding of fact not supported by substantial credible evidence that would amount to a clear abuse of discretion. Our review for abuse of discretion is whether the trial court acted arbitrarily, without employment of conscientious judgment, or exceeded the bounds of reason resulting in substantial injustice. In re M.B. , 2009 MT 97, ¶ 11, 350 Mont. 76, 204 P.3d 1242 (citations and internal quotations omitted).
¶ 13 Questions of justiciability, such as standing, are questions of law which we review de novo. We determine whether a party has standing as of the time the action is brought. In re C.B.D. , 2017 MT 108, ¶ 5, 387 Mont. 347, 394 P.3d 202 (citation and internal quotation omitted).
DISCUSSION
¶ 14 Did the District Court err by allowing a child's grandmother to pursue a parental interest under Title 40 while a dependent neglect case was pending under Title 41?
¶ 15 The District Court adjudicated A.J.C. as a youth in need of care in DN 14-06 under the authority of Title 41, ch. 3, Mont. Code Ann. While the Title 41 action was pending, Grandmother filed a petition to establish a parental interest and a parenting plan pursuant to § 40-4-228, MCA. Father moved to dismiss Grandmother's petition, asserting lack of standing and jurisdiction. The District Court ultimately ordered a parenting plan that provided for A.J.C. to reside primarily with Grandmother and to spend six weeks each summer with Father.
¶ 16 Father argues that pursuant to § 40-4-228(1), MCA, Grandmother, a nonparent, did not have standing to pursue a parental interest while the Title 41 action was pending and thus the District Court erred in issuing a parenting plan which awarded custody to Grandmother ***27 because it lacked jurisdiction to do so. Father further argues the District Court deprived him of his fundamental right to parent by inappropriately using a best interest test to award custody to Grandmother, a nonparent.
¶ 17 Grandmother asserts A.J.C. desires to live with her. She asserts Father abandoned A.J.C. and she faults Father for being an absent parent until the DN case was commenced. She characterizes Father as only a "sperm donor" and argues Father should not be rewarded with standing because of a "technicality in the law." She invites us to "clarify and/or correct" the DR and DN statutes.
¶ 18 A threshold question in every case is whether a party has standing to bring an action. In re C.B.D. , ¶ 7 (citation omitted). Here, the question is whether Grandmother has standing to pursue a parental interest under Title 40 during the pendency of a separate dependent abuse and neglect case under Title 41, in light of § 40-4-228(1), MCA. Section 40-4-228(1), MCA, states in relevant part: "In cases when a nonparent seeks a parental interest in a child under 40-4-211 *71 ... the provisions of this chapter apply unless a separate action is pending under Title 41, chapter 3 ." (Emphasis added.)
¶ 19 Grandmother points to § 40-4-211(4)(b), MCA, which provides that a parenting plan proceeding may be commenced in a district court by a nonparent if that person has established a child-parent relationship with the child.[2] She asserts § 40-4-211, MCA, "seems" to give her standing, but acknowledges that her interpretation of the applicability of § 40-4-211, MCA, places it in conflict with § 40-4-228(1), MCA. Grandmother appears to recognize that the application of § 40-4-228, MCA, limits her ability to pursue her action under § 40-4-211, MCA ; she argues this Court should "revise[ ] or modif[y]" § 40-4-228(1), MCA, to permit her to pursue a parental interest action even though a DN action is pending.
¶ 20 Revision or modification of a statute is the province of the Legislature, not this Court. This Court will not intrude in areas properly the province of the Legislature. Anesthesiology, P.C. v. Blue Cross & Blue Shield , 246 Mont. 277, 280, 806 P.2d 16, 18 (1990). Our role is to interpret and apply statutes consistent with their plain language and where the language is ambiguous, consistent with the legislative intent. Sweeney v. Mont. Third Jud. Dist. Ct. , 2018 MT 95, ¶ 12, 391 Mont. 224, 416 P.3d 187 ;
***28 Gulbrandson v. Carey , 272 Mont. 494, 500, 901 P.2d 573, 577 (1995) (citations omitted); Pinnow v. Mont. State Fund , 2007 MT 332, ¶ 37, 340 Mont. 217, 172 P.3d 1273 (even where Court notes "gaping holes in the statutory scheme," it is the province of the Legislature, not this Court, to remedy).
¶ 21 Section 40-4-211(4)(b), MCA, gives standing to a nonparent to seek a parenting interest of a minor child if that person has established a child-parent relationship. Kulstad v. Maniaci , 2009 MT 326, ¶ 57, 352 Mont. 513, 220 P.3d 595. However, this statute must be read in conjunction with § 40-4-228(1), MCA, which precludes the application of Title 40, ch. 4 while a separate action is pending under Title 41, ch. 3. By the clear, unambiguous language of § 40-4-228(1), MCA, Grandmother lacked the ability to pursue an action to establish a parental interest while the Title 41 child dependency action was pending and the District Court erred in awarding Grandmother custody or visitation while the Title 41 child dependency action was pending.
¶ 22 Recognizing Montana law does not provide her the ability to pursue a parental interest during pendency of a Title 41 child dependency proceeding, Grandmother asserts we should instead adopt a best interest test, because she alleges it is in A.J.C.'s best interest to reside with her. We have already determined such an approach to be unconstitutional and contrary to a parent's fundamental right to parent. In re Parenting of J.N.P. v. Knopp , 2001 MT 120, 305 Mont. 351, 27 P.3d 953. In In re Parenting of J.N.P. , the grandparents filed a petition for a parenting plan asserting it was in their grandchild's best interest to reside with them. The District Court dismissed the petition, concluding that, absent termination of mother's parental rights, it had no authority to grant a parenting plan to grandparents. In re Parenting of J.N.P. , ¶ 12. This Court affirmed and expounded on the pitfalls of elevating a best interest test over a parent's fundamental right to parent:
[A] natural parent cannot be denied custody of his or her child absent termination of that person's parental rights for abuse or neglect pursuant to Title 41, Chapter 3 of the Montana Code.
Our case law does not permit destruction of a natural parent's fundamental right to the custody of his or her child based simply on the subjective determination of that child's best interest. Were we to allow such a result, the implications are obvious. Is it in a child's best interest that he or she be raised in an affluent family as opposed to an impoverished family? Would it be better that a child be raised by extremely intelligent parents rather than people of average intelligence? Is a child better off if that child is raised ***29 in a conventional life style rather than an unconventional life style? All of these factors could arguably be considered *72 in determining the child's best interests. However, none even remotely justify denying a parent's constitutional and fundamental right to the custody of his or her child.
In re Parenting of J.N.P. , ¶¶ 25-26.
¶ 23 Here, the District Court should have stayed the DR action until the Title 41 action was resolved, at which time the District Court could lift the stay, issue an interim parenting plan if it deemed necessary, hear Father's and Grandmother's petitions, and then issue detailed written findings of fact and conclusions of law and a parenting plan, if appropriate. Thus, we remand to the District Court for further action consistent with this Court's Opinions here and in DA 17-0600.
CONCLUSION
¶ 24 Because Grandmother could not pursue a parental interest and parenting plan during the pendency of a Title 41 child dependency proceeding, the District Court erred in ordering a parenting plan which awarded Grandmother primary residential custody during the course of an ongoing child dependency proceeding.
¶ 25 Reversed and remanded for action consistent with this Opinion.
We concur:
MIKE McGRATH, C.J.
JAMES JEREMIAH SHEA, J.
BETH BAKER, J.
LAURIE McKINNON, J.
DIRK M. SANDEFUR, J.
JIM RICE, J.

As the parties to each of these appeals are not identical, this Court has issued separate Opinions. See In re A.J.C. , DA 17-0600. However, these appeals are interrelated and based on the same underlying facts. The District Court consolidated Father's parenting plan action (DR 14-71) with Grandmother's parental interest/parenting plan action (DR 15-37), and then held joint hearing on April 12, 2016 on these matters as well as on the Department's motion to approve its permanency plan (DN 14-06).

The parties do not dispute that Grandmother has established a "child-parent relationship" with A.J.C. as that term is defined in § 40-4-211(6), MCA.